Victor Hugo SALDANO, Appellant,

v.

The STATE of Texas.

No. 72,556.

Court of Criminal Appeals of Texas, En Banc.

March 13, 2002.

---

Stanley G. Schneider, Scott J. Atlas, Amicus Curiae, Houston, Gregory S. Coleman, Assist. AG, Austin, for appellant.

John A. Stride, Assist. DA, McKinney, Matthew Paul, St. Att., Austin, for state.

WOMACK, J., delivered the opinion of the Court, in Part I of which all Members of the Court joined, and in Part II of which KELLER, P.J., and MEYERS, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

This case comes before us again on remand from the Supreme Court of the United States. After we affirmed his conviction on September 15, 1999, the appellant petitioned the Supreme Court for a writ of certiorari. The question for review was, "Whether a defendant's race or ethnic background may ever be used as an aggravating circumstance in the punishment phase of a capital murder trial in which the State seeks the death penalty."[1] The Attorney General of Texas filed a response to the petition, in which he confessed that the prosecution's introduction of race as a factor for determining "future dangerousness" constituted a violation of the appellant's rights to equal protection and due process.[2] The Supreme Court granted the petition, summarily vacated our judgment, and remanded the case to us "for further consideration in light of the confession of error by the Solicitor General of Texas."[3]

## I.

At the threshold is a question of the attorney general's authority to confess

1. Pet. at 3.

2. Response at 1.

3. 530 U.S. 1212, 120 S.Ct. 2214, 147 L.Ed.2d 246 (2000). "Solicitor General" is a title recently given to an assistant attorney general. In the government of Texas there is no office of solicitor general that corresponds with the solicitor general of the United States, who is appointed by the president with the advice and consent of the senate, *see* 28 U.S.C. § 505.

error for the State in a certiorari proceeding in a criminal case before the Supreme Court. The question arises because no constitutional or statutory provision gives the attorney general authority to represent the State in such proceedings or, indeed, in any criminal proceeding. We directed the parties, and invited the Attorney General, to brief and argue the issue. They have done so.

### A. Constitutional and Statutory Authority of the County and District Attorneys

The duty of criminal prosecution in the trial courts of record is on the county attorney and the district attorney (or criminal district attorney). In the courts of appeals the duty is on the same officers and on the state prosecuting attorney. In the court of criminal appeals, the duty is on the state prosecuting attorney, with the assistance of the county and district attorneys.

Every constitution of Texas, as a republic and as a state, has provided for district attorneys to represent Texas in criminal prosecutions. The office of district attorney has always been in the judicial department of government.[4] The office of county attorney was added to the judicial department in 1866 when the county court was created with jurisdiction of misdemeanor and petty offenses.[5] The present Constitution gives the authority to prosecute criminal cases to the county attorneys, criminal district attorneys, and district attorneys, under the regulation of the legislature:

> A County Attorney, for counties in which there is not a resident Criminal District Attorney, shall be elected by the qualified voters of each county, who shall be commissioned by the Governor, and hold his office for the term of four years. In case of vacancy the Commissioners Court of the county shall have the power to appoint a County Attorney until the next general election. The County Attorneys shall represent the State in all cases in the District and inferior courts in their respective counties; but if any county shall be included in a district in which there shall be a District Attorney, the respective duties of District Attorneys and County Attorneys shall in such counties be regulated by the Legislature.[6]

The legislature has regulated the duties of the district attorneys and county attorneys by giving only to them the authority to prosecute criminal cases, and by giving them authority to represent the State in appeals.[7] Their authority to represent the State in appeals is limited only by a special

---

4. See REPUB. TEX. CONST. of 1836, art. IV, § 5; TEX. CONST. of 1845, art. IV, § 12; TEX. CONST. of 1861, art. IV, § 12; TEX. CONST. of 1866, art. IV, § 14; TEX. CONST. of 1869, art. V, § 12; TEX. CONST., art. V, § 21.

5. See TEX. CONST. of 1866, art IV, § 15 (establishing county court in each county); id., § 16 (fixing jurisdiction of court and authorizing legislature to provide for county attorneys to represent the State and county in the court).

6. TEX. CONST. art. V, § 21. There is yet a fourth prosecutorial office, the city attorney.

"In the municipal court the city attorney has the right and duty to prosecute, and the county attorney has the right, but not a duty, to prosecute." Aguirre v. State, 22 S.W.3d 463, 469 (Tex.Cr.App.1999). The authority of the city attorney is not material to this case.

7. "Each district attorney shall represent the State in all criminal cases in the district courts of his district and in appeals therefrom, except in cases where he has been, before his election, employed adversely. When any criminal proceeding is had before an examining court in his district or before a

statute that creates in the judicial department the office of state prosecuting attorney, which has primary authority to represent the State in this Court and authority to represent the State in the intermediate courts of appeal if the state prosecuting attorney considers it necessary.[8] District and county attorneys may assist the state prosecuting attorney in representing the State in this Court.[9] They have the primary authority to represent the State on appeal in other courts,[10] subject to the

state prosecuting attorney's authority to intervene in a court of appeals.

This diffusion of the authority to prosecute is in keeping with the deliberately "fractured" nature of Texas government, in which the "framers of our constitution, influenced by the political philosophy of the Jacksonian era and the despotic control of the reconstruction governor, deliberately chose to decentralize executive authority." [11]

judge upon habeas corpus, and he is notified of the same, and is at the time within his district, he shall represent the State therein, unless prevented by other official duties." TEX.CODE CRIM. PROC. art. 2.01.

"The county attorney shall attend the terms of court in his county below the grade of district court, and shall represent the State in all criminal cases under examination or prosecution in said county; and in the absence of the district attorney he shall represent the State alone and, when requested, shall aid the district attorney in the prosecution of any case in behalf of the State in the district court. He shall represent the State in cases he has prosecuted which are appealed." *Id.*, art. 2.02.

In some particular counties the authority to prosecute felony and misdemeanor cases, and to represent the county in civil matters, are variously divided. *See generally* TEX. GOV'T CODE ch. 43 (district attorneys); *id.*, ch. 44 (criminal district attorneys), *id.*, ch. 45 (county attorneys).

8. *See* TEX. GOV'T CODE § 42.001(a) ("The court of criminal appeals shall appoint a state prosecuting attorney to represent the state in all proceedings before the court. The state prosecuting attorney may also represent the state in any stage of a criminal case before a state court of appeals if he considers it necessary for the interest of the state"); *Ex parte Taylor,* 36 S.W.3d 883, 887 (Tex.Cr.App.2001) ("the state prosecuting attorney [has] the primary authority in this court and an authority to intervene in the courts of appeals").

9. *See* TEX. GOV'T CODE § 42.005(b) ("A district or county attorney may assist the state prose-

cuting attorney in representing the state before the court of criminal appeals").

10. *See* TEX.CODE CRIM. PROC. art. 2.01 ("Each district attorney shall represent the State in all criminal cases in the district courts of his district and in appeals therefrom"); *id.*, art. 2.02 ("The county attorney ... shall represent the State in cases he has prosecuted which are appealed").

11. *State v. Brabson,* 976 S.W.2d 182, 186 (Tex.Cr.App.1998) (Womack, J., concurring), *adopted by the Court, Reynolds v. State,* 4 S.W.3d 13, 15 (Tex.Cr.App.1999). "The constitution created seven officers in the executive department, only one of whom is appointed by the governor, the others being elected by popular vote. This in effect creates a separation of powers within the executive department itself.

"Administrative power is further decentralized by the creation of more than a hundred independent state agencies, practically all of which are headed either by elected executives or by part-time boards and commissions, that are independent of the governor and of each other. Even if the governor appoints the members of a commission (with the approval of the Senate which traditionally respects the rule of 'senatorial courtesy' which allows a nomination to be vetoed by the senator from the nominee's district), the members usually serve overlapping terms that are longer than the governor's four-year term, which makes it difficult for the governor to achieve control of a majority. And it is a gross mistake to assume that even the commissions wield real powers in state agencies; the executive di-

[T]he State of Texas ... has given its authority to prosecute [criminal] cases to more than three hundred independently elected prosecutors, each of whom exercises authority in an area of the state no larger than a judicial district. This model differs from the federal model not only because there is no central prosecuting authority, but also because the prosecutors are officers of the judicial branch of government.[12]

The Constitution and laws, therefore, have deliberately and expressly given district attorneys and county attorneys general authority to represent the State in appeals of criminal cases.

### B. Constitutional and Statutory Authority of the Attorney General

The attorneys general of most states have authority to prosecute criminal cases.

The structure of the office and the duties of the attorney general vary from state to state and are defined in state constitutions, statutes, and court decisions in varying degrees of detail and emphasis. However, to the extent a common thread can be discerned, the duties have been summarized as follows: providing informal legal advice and formal legal opinions to the governor and other state officials and agencies and sometimes the legislature; representing the state, state agencies, and state officers in litigation; enforcing state civil and criminal law; and supervising local prosecutors in some states. . . .

Although the duty is shared in a variety of ways with local government prosecutors, most state attorneys general have as one of their responsibilities the investigation and prosecution of state criminal offenses.[13]

The office of attorney general of Texas has never had authority to institute a criminal prosecution. Before 1876 it had constitutional authority to represent the State in appeals of criminal cases, and it had statutory authority to do so until 1923. Since then it has had no authority to represent the State in a criminal case in any court, except when a county or district attorney requests it to assist.

The Constitution of the Republic of Texas did not create an office of attorney general, although it did create the office of district attorney. The executive officers were a president,[14] a vice-president,[15] a secretary of state,[16] and "such other heads of executive departments as may be established by law." [17] The first act of the First Congress created four other executive offices, including that of attorney general.[18]

rectors chosen by the commissions tend to be the dominant force in the agencies." Id. at 187 (citations and footnote omitted).

12. Brabson, 976 S.W.2d at 187.

13. Scot M. Matheson, Jr., Constitutional Status and Role of the State Attorney General, 6 J.L. & Pub. Pol'y 1, 3, 24 (1993).

14. See Repub. Tex. Const. of 1836, art. III, § 1, reprinted in 3 Vernon's Constitution of the State of Texas Annotated 482 (1993).

15. See id., art. VI, § 14.

16. See id., art. VI, § 10.

17. Ibid.

18. Act Authorizing the President of the Republic to Appoint His Cabinet Officers, approved October 25, 1836, 1 Laws of the Rep. of Tex., 1st Cong., 27, 27, reprinted in 1 H.P.N. Gammel, The Laws of Texas 1822–1897 at 1087, 1087 (authorizing the president to appoint "a secretary each of the treasury,

The duties of these officers were described only in general terms.[19]

When Texas was admitted to the Union, the office of attorney general appeared in the judicial article of the state constitution of 1845, which said only that the duties of the district attorneys and the attorney general were to be prescribed by law.[20] The First Legislature gave the district attorney the duty "to conduct all prosecutions for crimes and offenses cognizable in [the district] court,"[21] and the attorney general the duty to "counsel and advise the several district attorneys . . . whenever requested by them so to do."[22]

These roles of the district attorneys and the attorney general in Texas were similar to those of the equivalent offices in the federal government at that time.

Unlike the present day, when the Department of Justice in Washington, headed by the Attorney General, and employing hundreds of lawyers, maintains tight control over the work of the U.S. Attorneys, the situation in 1861 was quite different. There was then, of course, an Attorney General who sat in the President's Cabinet, but he did not head a government department; the Department of Justice would not be created until 1870. And until Congress acted in August 1861, the Attorney General had no authority to control the actions of the United States Attorneys in the various judicial districts. He could and did advise them on points of law or on government policy. But he gave advice, not direction.[23]

The first attorney general of Texas also was given the duty "to prosecute and defend all actions in the supreme court of the State, in which the State may be interested."[24] Under this division of authority the attorney general appeared in criminal cases before the state's only appellate court, the Supreme Court.[25] District attorneys appeared with the attorney general in criminal cases before the appellate court from time to time.

In the Reconstruction Constitution of 1869, the office of attorney general moved to the executive department.[26]

The Constitution of 1876, which still defines our government, kept the attorney general in the executive branch. The constitutional duties of the office are described thus:

war, and navy departments; also, an attorney general").

19. *See* Act Defining the Duties of the Heads of Departments of the Government, approved December 13, 1836, 1 Laws of the Rep. of Tex., 1st Cong., 77, 77, *reprinted in* 1 H.P.N. GAMMEL, THE LAWS OF TEXAS 1822–1897 at 1137, 1137 ("to reside permanently at the seat of government; to conform to and execute the instructions of the president, whether general or particular").

20. *See* TEX. CONST. of 1845, art. IV, § 12; TEX. CONST. of 1866, art. IV, § 13.

21. Act approved 13th May, 1846, 1st Leg., R.S., § 2, 1846 Tex. Gen. Laws 295, 296, *reprinted in* H.P.N. GAMMEL, 2 THE LAWS OF TEXAS 1822–1897, at 1601, 1602 (Austin, Gammell Book Co. 1898).

22. Act approved 11th May, 1846, 1st Leg., R.S., § 3, 1846 Tex. Gen. Laws 206, 206, *reprinted in* H.P.N. GAMMEL, 2 THE LAWS OF TEXAS 1822–1897, at 1512, 1512 (Austin, Gammell Book Co. 1898).

23. WILLIAM H. REHNQUIST, ALL THE LAWS BUT ONE 42 (1998).

24. Act approved 11th May, 1846, *supra* note 20, § 1.

25. *See, e.g., Needham v. State*, 1 Tex. 139, 140 (1847).

26. *See* TEX. CONST. of 1869, art. IV, § 23.

The Attorney General shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party, and shall especially inquire into the charter rights of all private corporations, and from time to time, in the name of the State, take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power or demanding or collecting any species of taxes, tolls, freight or wharfage not authorized by law. He shall, whenever sufficient cause exists, seek a judicial forfeiture of such charters, unless otherwise expressly directed by law, and give legal advice in writing to the Governor and other executive officers, when requested by them, and perform such other duties as may be required by law.

The same Constitution took away the Supreme Court's jurisdiction of criminal cases,[27] thereby eliminating the specific constitutional authority of the attorney general to represent the State in appeals of criminal cases.

The Constitution gives the county attorneys and district attorneys authority to represent the State in criminal cases. It authorizes the legislature to give the attorney general duties which, presumably, could include criminal prosecution.

From 1876 to 1923, the attorney general had one, statewide responsibility in criminal cases: to represent the State in the Court of Appeals and its successor, the Court of Criminal Appeals. That responsibility was taken away by a legislative act in 1923 that created a special office to represent the State before the Court of Criminal Appeals.[28] According to the emergency clause of the act, the attorney general had assigned only one assistant to the court, and the docket of the court was so crowded that the assistant could not properly brief and argue the cases submitted to the court.

Since 1923 the legislature has not given the attorney general any duty to prosecute criminal cases at any level of the courts of Texas. The law gives the Attorney General of Texas no general authority to initiate a prosecution. "Under our state law, only county and district attorneys may represent the state in criminal prosecutions. The attorney general, on the other hand, has no criminal prosecution authority. Rather, he is generally limited to representing the State in civil litigation."[29] The authority of the attorney general is limited to assisting the district or county attorney, upon request.[30]

The limitation of the attorney general's authority to civil cases, while unusual in

27. "The Supreme Court shall have appellate jurisdiction only, which shall be coextensive with the limits of the state; but shall only extend to civil cases of which the district courts have original or appellate jurisdiction." TEX. CONST. of 1876, art. V, § 3. Today, the Supreme Court's "appellate jurisdiction . . . shall extend to all cases except in criminal law matters." TEX. CONST. art. V, § 3.

28. Act of March 23, 1923, 38th Leg., R.S., ch. 156, 1923 Tex. Gen. Laws 335.

29. *State ex rel. Hill v. Pirtle,* 887 S.W.2d 921, 930 (Tex.Cr.App.1994) (plurality op.) (cita-

tions omitted). "Nothing in the constitution or the laws of the state authorize prosecution of a criminal case in the trial courts of this state by the attorney general or, absent disqualification, by any person other than the duly elected district or county attorney. . . . [T]he legislature historically has seen fit not to grant such authority in the form of proposed constitutional amendments or legislation." *Id.* at 932 (concurring op.).

30. *See* TEX. GOV'T CODE § 402.028:
 *"Assistance to Prosecuting Attorneys*
 "(a) At the request of a district attorney, criminal district attorney, or county attorney,

comparison to that of other attorneys general, mirrors limitations in the judicial department of Texas' government. The Supreme Court of Texas has had no jurisdiction of criminal cases since 1876, and Texas is one of only two states with a separate court of last resort for criminal cases. From 1891 until 1981, Texas also had intermediate courts of civil appeals—fourteen intermediate courts that, as the name implies, had jurisdiction only in civil cases. And in the state's most populous county, as well as in some others, county attorneys have authority to represent the State in civil cases only.[31]

## C. *Tradition*

The attorney general claims authority to represent the State before the Supreme Court of the United States because of a long practice of doing so.[32] During most of the time in which this tradition developed, the Texas Constitution forbade the State from appealing in a criminal case.[33] In 1981 a district attorney sought to petition the Supreme Court of the United States for a writ of certiorari to review an adverse decision of this Court when the attorney general refused to do so. The defendant applied to us for a writ of prohibition on the ground that the Constitution forbade an appeal by the State. We decided that the constitutional prohibition of appeals by the State applied only to appeals in the courts of this state, and it did not forbid the State to petition for writs of certiorari.[34] Since then district attorneys of this state have applied for, and been granted, writs of certiorari from the Supreme Court of the United States to review adverse decisions of this Court and the courts of appeals of Texas.[35] They have sought, and been denied, writs in

---

the attorney general may provide assistance in the prosecution of all manner of criminal cases, including participation by an assistant attorney general as an assistant prosecutor when so appointed by the district attorney, criminal district attorney, or county attorney.

"(b) A district attorney, criminal district attorney, or county attorney may appoint and deputize an assistant attorney general as assistant prosecutor to provide assistance in the prosecution of criminal cases, including the performance of any duty imposed by law on the district attorney, criminal district attorney, or county attorney.

"(c) Nothing in this section shall prohibit an assistant attorney general from appointment as attorney pro tem under the provisions of Article 2.07, Code of Criminal Procedure."

31. "It is the primary duty of the county attorney ... to represent the state ... in all civil matters," in the state's most populous county, Harris. Tex. Gov't Code § 45.201. The same is true in the counties of Fort Bend, *id.* § 45.179, Grimes, *id.* § 45.193, Matagorda, *id.* § 45.261, Webb, *id.*, § 45.340, and Wharton, *id.* § 45.341, and in El Paso County, *id.* § 45.171(a), except that the county attorney

retains authority in a few, particular kinds of criminal cases.

32. Attorney General's Brief at 9.

33. *See* Tex. Const. art. V, § 26 (amended 1987) ("The State shall have no right of appeal in criminal cases").

34. *Faulder v. Hill,* 612 S.W.2d 512 (Tex.Cr. App.1980).

35. *See Texas v. Parrish,* 510 U.S. 801, 114 S.Ct. 41, 126 L.Ed.2d 11 (1993) (District Attorney of Harris County); *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (Criminal District Attorney of Dallas County); *Texas v. Jackson,* 475 U.S. 1114, 106 S.Ct. 1627, 90 L.Ed.2d 175 (1986) (Criminal District Attorney of Bexar County); *Texas v. McCullough,* 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986) (Criminal District Attorney of Randall County); *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (Criminal District Attorney of Tarrant County).

other cases.[36] And they have replied to applications from defendants in other

**36.** *See Texas v. Consaul,* 67 U.S.L.W. 3684, *rev. denied,* 526 U.S. 1160, 119 S.Ct. 2051, 144 L.Ed.2d 218 (1999) (District Attorney of 34th Judicial District); *Texas v. Fernandez,* 67 U.S.L.W. 3259, 3305, *rev. denied,* 525 U.S. 1033, 119 S.Ct. 576, 142 L.Ed.2d 479 (1998) (Criminal District Attorney of Bexar County); *Texas v. Cook,* 66 U.S.L.W. 3029, 3089 *rev. denied,* 522 U.S. 821, 118 S.Ct. 75, 139 L.Ed.2d 35 (1997) (Criminal District Attorney of Smith County); *Texas v. Mowbray,* 65 U.S.L.W. 3755, 3802 *rev. denied,* 521 U.S. 1120, 117 S.Ct. 2513, 138 L.Ed.2d 1016 (1997) (Criminal District Attorney of Cameron County); *Texas v. Clark,* 65 U.S.L.W. 3444, 3492, *rev. denied,* 520 U.S. 1116, 117 S.Ct. 1246, 137 L.Ed.2d 328 (1997) (Criminal District Attorney of Tarrant County); *Texas v. Mitchell,* 62 U.S.L.W. 3061, 3157, *rev. denied,* 510 U.S. 864, 114 S.Ct. 183, 126 L.Ed.2d 142 (1993) (Criminal District Attorney of Smith County); *Texas v. McPherson,* 61 U.S.L.W. 3669, 3778, *rev. denied,* 508 U.S. 939, 113 S.Ct. 2414, 124 L.Ed.2d 637 (1993) (Criminal District Attorney of Randall County); *Texas v. Wilkens,* 61 U.S.L.W. 3586, 3655, *rev. denied,* 507 U.S. 1005, 113 S.Ct. 1646, 123 L.Ed.2d 268 (1993) (Criminal District Attorney of Smith County); *Texas v. Rios,* 61 U.S.L.W. 3635, 3721, *rev. denied,* 507 U.S. 1051, 113 S.Ct. 1946, 123 L.Ed.2d 651 (1993) (Criminal District Attorney of Bexar County); *Texas v. Martinez,* 61 U.S.L.W. 3456, 3549, *rev. denied,* 507 U.S. 972, 113 S.Ct. 1414, 122 L.Ed.2d 785 (1993) (Criminal District Attorney of Tarrant County); *Texas v. Jimenez,* 61 U.S.L.W. 3155, 3207, *rev. denied,* 506 U.S. 917, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992) (Criminal District Attorney of Midland County); *Texas v. Hill,* 61 U.S.L.W. 3083, 3200, *rev. denied,* 506 U.S. 905, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992) (Criminal District Attorney of Dallas County); *Texas v. Corley,* 61 U.S.L.W. 3752, 3839, *rev. denied,* 509 U.S. 913, 113 S.Ct. 3020, 125 L.Ed.2d 709 (1993) (Criminal District Attorney of Smith County); *Texas v. Walker,* 60 U.S.L.W. 3553, 3634, *rev. denied,* 503 U.S. 939, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992) (Criminal District Attorney of Smith County); *Texas v. Cook,* 60 U.S.L.W. 3553, 3690, *rev. denied,* 503 U.S. 939, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992) (Criminal District Attorney of Smith County); *Texas v.*

*Skelton,* 59 U.S.L.W. 3066, 3203, *rev. denied,* 499 U.S. 984, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1990) (District Attorney of 70th Judicial District); *Texas v. Reeves,* 59 U.S.L.W. 3654, 3708, *rev. denied,* 499 U.S. 984, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991) (Criminal District Attorney of Tarrant County); *Texas v. Cox,* 59 U.S.L.W. 3654, 3709, *rev. denied,* 500 U.S. 928, 111 S.Ct. 2042, 114 L.Ed.2d 126 (1991) (Criminal District Attorney of Tarrant County); *Texas v. Smith,* 58 U.S.L.W. 3154, 3244, *rev. denied,* 493 U.S. 1018, 110 S.Ct. 716, 107 L.Ed.2d 736 (1989) (District Attorney of Harris County); *Texas v. Chambers,* 58 U.S.L.W. 3491, 3533, *rev. denied,* 496 U.S. 912, 110 S.Ct. 2602, 110 L.Ed.2d 282 (1990) (Criminal District Attorney of Dallas County); *Texas v. Brandley,* 59 U.S.L.W. 3016, 3069, *rev. denied,* 498 U.S. 817, 111 S.Ct. 61, 112 L.Ed.2d 35 (1990) (Criminal District Attorney of Montgomery County); *Texas v. Daniels,* 55 U.S.L.W. 3153, 3262, *rev. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986) (District Attorney of Harris County); *Texas v. Adley,* 54 U.S.L.W. 3743, 3070, *rev. denied,* 479 U.S. 815, 107 S.Ct. 68, 93 L.Ed.2d 26 (1986) (Criminal District Attorney of Dallas County); *Texas v. Wilkerson,* 56 U.S.L.W. 3030, 3078, *rev. denied,* 484 U.S. 826, 108 S.Ct. 93, 98 L.Ed.2d 54 (1987) (District Attorney of Harris County); *Texas v. Long,* 56 U.S.L.W. 3463, 3534, *rev. denied,* 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988) (Criminal District Attorney of Dallas County); *Texas v. Crosby,* 56 U.S.L.W. 3720, 3773, *rev. denied,* 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988) (Criminal District Attorney of Dallas County); *Texas v. Broadway,* 56 U.S.L.W. 3165, 3252, *rev. denied,* 484 U.S. 908, 108 S.Ct. 251, 98 L.Ed.2d 209 (1987) (Criminal District Attorney of Tarrant County); *Texas v. Van Guilder,* 54 U.S.L.W. 3664, 3747, *rev. denied,* 476 U.S. 1169, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986) (Criminal District Attorney of Bexar County in personal capacity); *Texas v. Dunn,* 54 U.S.L.W. 3272, 3349, *rev. denied,* 475 U.S. 1089, 106 S.Ct. 1478, 89 L.Ed.2d 732 (1986) (District Attorney of Harris County); *Texas v. Chambers,* 53 U.S.L.W. 3854, 54 U.S.L.W. 3009, *rev. denied,* 474 U.S. 864, 106 S.Ct. 181, 88 L.Ed.2d 150 (1985) (Criminal District Attorney of Dallas County); *Texas v. Wilkerson,* 52 U.S.L.W.

cases. Yet it is certainly true that the attorney general traditionally has represented the State, most capably, in the great majority of its criminal cases in the Supreme Court.

As we have said recently in another context, a long practice whereby two prosecuting officials could seek appellate review in a higher court cannot prevail over the proper construction of the law that grants authority to seek such review.[37] At the same time we held that the State has only one interest in a criminal case, and the State can be represented by only one attorney in making such decisions as whether to seek review and whether to confess error.[38] Only from a clear expression of law that gave two officials the duty and authority to represent the State simultaneously in certiorari proceedings in criminal cases in the Supreme Court of the United States would we construe the law of this state in such a way.

### D. *Conclusion*

■ The language and the history of the constitutional and statutory provisions that create and regulate the attorney general, the district attorneys, and the county attorneys are clear. They expressly give district attorneys and county attorneys general authority to represent the State in appeals of criminal cases. They express no authority for the attorney general to represent the State in criminal cases without the request of a district or county attorney. The tradition of the attorney general's representation of the State on certiorari proceedings in criminal cases cannot provide authority that the law does not. The law gives only one answer to the question before us: The authority to represent the State in criminal cases in certiorari proceedings in the Supreme Court of the United States is in the district attorney or county attorney who had the authority to prosecute the case in the courts of Texas, and the attorney general is authorized to provide assistance to such an attorney at the request of that attorney or when such an attorney appoints an assistant attorney general as an assistant prosecutor or attorney pro tem under section 402.028 of the Government Code.

■ The tradition of the attorney general's representation of the State on certiorari proceedings in criminal cases can be helpful in understanding whether, in a particular case, the attorney general was assisting a county or district attorney at that attorney's request. As we understand the proceedings in this case, the District Attorney presumed that the Attorney General would represent the State in responding to the appellant's petition for certiorari. While the District Attorney did not expressly request such assistance, his silence in the face of a long practice whereby the attorney general has undertaken to respond to such petitions when the county or district attorney does not, should be construed as an implied request for such as-

---

3304, 3344, *rev. denied*, 470 U.S. 1008, 105 S.Ct. 1371, 84 L.Ed.2d 390 (1985) (District Attorney of Harris County); *Texas v. Samudio*, 51 U.S.L.W. 3792, 3846, *rev. denied*, 462 U.S. 1132, 103 S.Ct. 3113, 77 L.Ed.2d 1368 (1983) (District Attorney of Harris County); *Texas v. Myers*, 50 U.S.L.W. 3200, 3383, *rev. denied*,

454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1981) (Criminal District Attorney of Tarrant County).

**37.** *See Ex parte Taylor*, 36 S.W.3d 883, 886 (Tex.Cr.App.2001).

**38.** *Id.* at 887.

sistance in this case.[39] We therefore conclude that the representation of the State by the Attorney General in this case was authorized by law. We turn to the question of the effect of the confession of error.

## II.

### A.

■ A confession of error by the prosecutor in a criminal case is important, but not conclusive, in deciding an appeal.

The public trust reposed in the law enforcement officers of the Government requires that they be quick to confess error when, in their opinion, a miscarriage of justice may result from their remaining silent. But such a confession does not relieve this Court of the performance of the judicial function. The considered judgment of the law enforcement officers that reversible error has been committed is entitled to great weight, but our judicial obligations compel us to examine independently the errors confessed. The public interest that a result be reached which promotes a well-ordered society is foremost in every criminal proceeding. That interest is entrusted to our consideration and pro-

tection as well as that of the enforcing officers. Furthermore, our judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties.[40]

When presented with confessions of error, we have agreed frequently that the able prosecutors have correctly concluded that error was presented. But we have always done so after an independent examination of the merits of the claim of error.[41]

In this case the State has confessed in the Supreme Court the commission of an error that was not considered by us when the case was first submitted, because of our well-settled law that prevents appellate review of most claims that were not made in the trial court.

We begin our consideration of this confession of error by stating the facts. After the appellant was found guilty of capital murder, the parties presented the jury with evidence on the question of punishment.[42] One of the special issues for capital-sentencing juries is "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." [43] The State elicited testimony from Dr. Wal-

---

**39.** After the Attorney General confessed error, the District Attorney sought, but was denied permission, to file a brief defending the judgment in the Supreme Court.

**40.** *Young v. United States,* 315 U.S. 257, 258–59, 62 S.Ct. 510, 86 L.Ed. 832 (1942) (citation omitted).

**41.** *See, e.g., Saenz v. State,* 842 S.W.2d 286 (Tex.Cr.App.1992) (when the court of appeals had affirmed a conviction after the State confessed error, Court of Criminal Appeals undertook independent examination of the claim before finding that there was error); *Davis v. State,* 519 S.W.2d 874 (Tex.Cr.App.1975) (Court of Criminal Appeals agreed with State's confession that the appellant had been

sentenced under the wrong statute, but went on to hold that the applicable statute was constitutionally defective); *Joe's Bonding Co. v. State,* 481 S.W.2d 145 (Tex.Cr.App.1972) (Court of Criminal Appeals agreed with State's confession of error and independently sustained two other points of error). *See also Sauls v. State,* 666 S.W.2d 186 (Tex.App.-Beaumont 1983, pet. ref'd) (court of appeals refused to reverse conviction when State confessed error).

**42.** *See* TEX CODE CRIM. PROC. art. 37.071, § 2(a).

**43.** *Id.,* § 2(b)(1).

ter Quijano, a clinical psychologist, about statistical, "identifying markers" which help experts determine whether there is a probability that a defendant will present a future threat. One of the factors that, in his opinion, are associated with a defendant's future dangerousness was his race or ethnicity. Dr. Quijano testified that:

> "This is one of those unfortunate realities also that blacks and Hispanics are over-represented in the criminal justice system."

> \* \* \* \* \* \*

> "The race itself may not explain the over-representation, so there are other subrealities that may have to be considered. But, statistically speaking, 40 percent of inmates in the prison system are black, about 20 percent are—about 30 percent are white, and about 20 percent are Hispanics. So there's much over-representation." [44]

In response to the State's questioning, Dr. Quijano also stated that the appellant, an Argentinean, "would be considered a Hispanic." [45]

The appellant did not object. He met the testimony through cross-examination, undermining Dr. Quijano's credibility and demonstrating that his definition of "Hispanic" was questionable. Furthermore, the appellant called his own expert witness, Dr. James McCabe, to testify concerning the appellant's future dangerous-

ness. McCabe made clear that race is not a "causative" factor in recidivism:

> Q. [The appellant's counsel] Well, can you explain the difference to the jury between a correlational study and a study that might show us something about causation? What's the significance of that?

> A. [Dr. McCabe] Well, correlational studies—and this is basically what—the stage that he was showing—they show a relationship between two items or two things, two behaviors, such as recidivism and a person's race for instance.... And he said it is—the relationship is that more minorities tend to recidivate. But that is not all that helpful. Now, you use a lot of different things that may be more helpful. But it doesn't cause—in other words, being black or Hispanic or whatever doesn't cause a person to go out and do some damage to other people. It doesn't cause at all. [46]

■ The appellant does not claim that his trial counsel was derelict in failing to object to Dr. Quijano's testimony. [47] To establish ineffective assistance of counsel, the appellant would have been required to prove, among other things, that his trial counsel's actions were not the result of "sound trial strategy." [48] As we have recently held, when a defense counsel presented to the jury evidence that "blacks and Hispanics are overrepresented in the ... so-called dangerous population," coun-

---

**44.** 20 Reporter's Record at 75–76.

**45.** *Id.* at 76.

**46.** *Id.* at 187–88.

**47.** *See Ex parte Saldano,* No. 41,313–01 (Tex. Cr.App.1999), Application at p. 3 (presenting the claim that the appellant, as a foreign national, was denied prompt notice of his

right of consular access in violation of Article 36 of the Vienna Convention on Consular Relations). We denied the appellant's application on May 5, 1999.

**48.** *See Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

sel's performance did not fall below an objective standard of reasonableness.[49]

> Counsel might have been attempting, with Quijano's testimony, to do two things: (1) place before the jury all the factors it might use against appellant, either properly or improperly, in its assessment of his future dangerousness, and (2) persuade the jury that, despite all those negative factors, appellant would not be a future danger if imprisoned for life because the prison system's procedures and techniques would control or eliminate his tendency toward violence. Under the circumstances—the State had already presented evidence before the jury that appellant had a long and violent criminal record—we cannot say that counsel's conduct could not be considered sound trial strategy.[50]

That the appellant's method of handling the evidence was a strategy in this case is suggested by the separate application for habeas corpus that the appellant filed.[51] It contains no claim of ineffective assistance of counsel with respect to Dr. Quijano's testimony. This suggests that a hearing would demonstrate that his counsel chose not to object rather than neglecting to object.

### B.

Assessing the effect of the State's confession of error in this case is made more difficult because the error that was confessed concerns a claim that has not been properly presented to, or decided by, this Court. The question that the appellant presented to the Supreme Court ("whether a defendant's race or ethnic background may ever be used as an aggravating circumstance in the punishment phase of a capital murder trial in which the State seeks the death penalty") is not one this Court considered in our earlier opinion. We held that the question was not before us because the appellant made no objection to the testimony of which he complained on appeal.

Our rules require defendants to object at trial in order to preserve an error for review on appeal.[52] As to evidence in particular, our law is:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
>> (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of

(A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint ... and
(B) complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of ... Appellate Procedure; and
(2) the trial court:
(A) ruled on the request, objection, or motion, either expressly or implicitly; or
(B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal." TEX.R.APP. PRO. 33.1(a).

**49.** *Garcia v. State,* 57 S.W.3d 436 (Tex.Cr. App.2001).

**50.** *Id.* at 440–41.

**51.** *Ex parte Saldano, supra* note 47. Under our statutes, an application for a writ of habeas corpus from a person who has been sentenced to death must ordinarily be filed during the pendency of the appeal from the conviction. *See* TEX.CODE CR. PROC. art. 11.071, § 4(a).

**52.** "As a prerequisite to presenting a complaint on appellate review, the record must show that:
(1) the complaint was made to the trial court by a timely request, objection, or motion that:

record, stating the specific ground of objection, if the specific ground was not apparent from the context.... [53]

Our law has always been thus.[54] The courts of every state and the courts of the United States have similar rules.[55]

■■■ We have previously recognized two general policies for requiring specific objections. "First, a specific objection is required to inform the trial judge of the basis of the objection and afford him the opportunity to rule on it. Second, a specific objection is required to afford opposing counsel an opportunity to remove the objection or supply other testimony," [56] Stated more broadly, objections promote the prevention and correction of errors. When valid objections are timely made and sustained, the parties may have a lawful trial. They, and the judicial system, are not burdened by appeal and retrial. When a party is excused from the requirement of objecting, the results are the opposite.

For these reasons we have said, "All but the most fundamental rights are thought to be forfeited if not insisted upon by the party to whom they belong. Many consti-

tutional rights fall into this category. When we say 'that even constitutional guarantees can be waived by failure to object properly at trial,' we mean that some, not all, constitutional rights may be forfeited." [57]

The courts of every jurisdiction in this country have some doctrine that permits appellate courts to consider claims that such fundamental rights were violated without objection.[58] In the criminal law of this state, such errors are called "fundamental."

One such class of fundamental errors has been recognized by the legislature. A statute permits our appellate courts to consider claims that an error in the court's charge to the jury, to which no objection was made, was so grave as to deny a defendant a fair trial.[59]

Before 1993 this Court had recognized more than a dozen other kinds of fundamental error. This jurisprudence "reflects piecemeal developments that each have somewhat different rationales. The overall situation, then, simply cannot be explained by reference to any unifying principle or principles. *Marin v. State*

---

53. Tex.R. Evid. 103(a).

54. *See e.g., McCain v. State*, 139 Tex.Crim. 539, 546, 141 S.W.2d 613, 617 (1940) (op. on reh'g) (refusing to consider improper introduction of confession where defendant did not object at trial); *Rasberry v. State*, 116 Tex.Crim. 288, 290, 31 S.W.2d 439, 440 (1930) (op. on reh'g) (refusing to decide a challenge to the admissibility of testimony relating to illegal search because defendant did not object at trial); *Drechsel v. State*, 39 S.W. 678 (Tex.Cr.App.1897) (refusing to consider claim of erroneous admission of evidence when appellant did not object at the time); *Hill v. Baylor*, 23 Tex. 261, 263 (Tex. 1859) ("It is scarcely necessary to say, that objections to the admissibility of evidence not taken below, and which, if taken, might have been obviated at the trial, cannot be first

urged in this court, as a ground for reversing the judgment").

55. *See* Fed. R.Crim. Pro. 51; Fed.R.Evid. 103(a).

56. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Cr.App.1977).

57. *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Cr.App.1993) (quoting *Gibson v. State*, 516 S.W.2d 406, 409 (Tex.Cr.App.1974)).

58. *See, e.g.,* Fed. R.Crim. Pro. 52(b).

59. *See* Tex.Code Cr. Proc. art. 36.19; *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1984).

suggests both the need to reconsider this case law and a framework for that reconsideration."[60]

■ In *Marin v. State*, we said that the rules that require a timely and specific objection, motion, or complaint do not apply to two relatively small categories of errors: violations of "rights which are waivable only" and denials of "absolute systemic requirements."[61] Such errors may be raised for the first time on appeal.[62]

■ Examples of rights that are waivable-only include the rights to the assistance of counsel and the right to trial by jury.[63] The issue in *Marin* was "whether the failure of the trial judge to allow appointed counsel ten days of trial preparation in violation of article 1.051(e), Texas Code of Criminal Procedure, may be raised for the first time on appeal."[64] We found that the right protected by this statute was waivable-only because the Legislature said so:

> ... the Court of Appeals rightly determined that article 1.051(e) is waivable only, inasmuch as the Legislature said

so expressly by providing that appointed counsel "may waive the [10 days of] preparation time with the consent of the defendant in writing or on the record in open court." We agree with the lower court that this language clearly does not contemplate a forfeiture of the statutory right from a mere failure to object at trial.[65]

Absolute, systemic requirements were said to include jurisdiction of the person, jurisdiction of the subject matter, and a penal statute's being in compliance with the Separation of Powers Section of the state constitution.[66]

*Marin* has been a watershed decision in the law of error-preservation. After *Marin* we have held that a right that formerly was thought to be "waivable only" actually requires an objection at trial.[67] We have held that some requirements that were formerly held to be absolute requirements are not.[68] We have held that a party may be estopped from relying on an absolute requirement.[69] On the other hand, we have recognized three more absolute requirements since *Marin:* a constitutional requirement that a district court must con-

**60.** George E. Dix & Robert O. Dawson, Texas Practice—Criminal Practice and Procedure § 42.121 (1995).

**61.** *Marin*, 851 S.W.2d at 280.

**62.** *Ibid.*

**63.** *Ibid.*

**64.** *Id.* at 277.

**65.** *Id.* at 280.

**66.** *Id.* at 279.

**67.** *See Gonzalez v. State*, 8 S.W.3d 640 (Tex. Cr.App.2000) (claim of multiple punishments in violation of Fifth Amendment's Jeopardy

Clause, which was based on court's charge that allowed a general verdict to be returned on alternative theories of offense).

**68.** *See Hatch v. State*, 958 S.W.2d 813 (Tex. Cr.App.1997) (statutory requirement of verdict by twelve jurors); *Ex parte McJunkins*, 954 S.W.2d 39 (Tex.Cr.App.1997) (statutory requirement of concurrent sentencing for offenses tried in a single criminal action).

**69.** *See Prystash v. State*, 3 S.W.3d 522 (Tex.Cr. App.1999) (statutory requirement of jury charge), *cert. denied*, 529 U.S. 1102, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000); *State v. Yount*, 853 S.W.2d 6 (Tex.Cr.App.1993) (statute of limitation).

duct its proceedings at the county seat,[70] the constitutional prohibition of ex post facto laws,[71] and certain constitutional restraints on the comments of a judge.[72]

In the *Marin* framework, the question in this case is whether the introduction of the evidence in question was one to which the appellant was required to have made a timely, specific objection at trial. He was required to object unless his right to avoid this type of evidence is a right that is either waivable-only or an absolute, systemic requirement.

 That the State refrain from introducing evidence that violates the defendant's rights under the Equal Protection Clause is neither an absolute, systemic requirement nor a right that is waivable only. We have consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence.[73] This is true even though the error may concern a constitutional right of the defendant.[74] Specifically, a defendant's failure to object to testimony prevents his raising on appeal a claim that the testimony was offered for the sole purpose of appealing to the potential racial prejudices of the jury.[75]

**70.** *See Stine v. State,* 908 S.W.2d 429 (Tex.Cr. App.1995). The Court could not agree on a basis for this holding. Three judges held the requirement was jurisdictional, *see id.* at 430 (opinion of Overstreet, J.); one judge held the requirement was "systemic" but not jurisdictional, *see id.* at 433 (opinion of Meyers, J.); a fifth judge joined the judgment without opinion, *see ibid.* (Maloney, J.).

**71.** *See Ieppert v. State,* 908 S.W.2d 217 (Tex. Cr.App.1995).

**72.** *See Blue v. State,* 41 S.W.3d 129 (Tex.Cr. App.2000). The Court could not agree on the basis of this requirement. Four judges held that the judge's comments tainted the presumption of innocence and were fundamental error of constitutional dimension, *see id.* at 129 (opinion of Johnson, J.); a fifth judge held that the judge's comments violated the right to an impartial judge, *see id.* at 135 (opinion of Keasler, J.).

**73.** *See Crocker v. State,* 573 S.W.2d 190, 201 (Tex.Cr.App.1978) (improper bolstering). *See also Goodman v. State,* 701 S.W.2d 850, 864 (Tex.Cr.App.1985) (inadmissible hearsay); *Fancher v. State,* 659 S.W.2d 836, 839 (Tex. Cr.App.1983) (inadmissible confession); *Russell v. State,* 665 S.W.2d 771, 777–78 (Tex.Cr. App.1983) (opinion testimony), *cert. denied,* 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752 (1984); *Shannon v. State,* 567 S.W.2d 510 (Tex.Cr.App.1978) (testimony regarding irrelevant extraneous offense); *Granviel v. State,* 552 S.W.2d 107, 118 (Tex.Cr.App.1976) (expert testimony) *cert. denied,* 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977); *Bouchillon v. State,* 540 S.W.2d 319, 322 (Tex.Cr.App. 1976) (inadmissible hearsay); *Hinkle v. State,* 442 S.W.2d 728, 734 (Tex.Cr.App.1969) (inadmissible photograph).

**74.** *See Gauldin v. State,* 683 S.W.2d 411, 413 (Tex.Cr.App.1984) (statements obtained in violation of *Miranda*), *overruled on other grounds, State v. Guzman,* 959 S.W.2d 631, 634 (Tex.Cr.App.1998); *Mendoza v. State,* 552 S.W.2d 444, 450 (Tex.Cr.App.1977) (trial court did not commit fundamental error by allowing testimony that denied defendant federally guaranteed constitutional rights; defendant was required to object to preserve this error); *Boulware v. State,* 542 S.W.2d 677, 682–83 (Tex.Cr.App.1976) (*Witherspoon* error), *cert. denied,* 430 U.S. 959, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977); *Gibson v. State,* 516 S.W.2d 406, 409 (Tex.Cr.App.1974) (admissibility of post-arrest silence); *Ex parte Bagley,* 509 S.W.2d 332, 333–34 (Tex.Cr.App.1974) (admissibility of confession obtained in violation of *Miranda*); *Salas v. State,* 486 S.W.2d 956, 957 (Tex.Cr.App.1972) (admissibility of officer's testimony about a statement obtained as result of illegal search); *Valdez v. State,* 472 S.W.2d 754, 756 (Tex.Cr.App.1971) (admissibility of evidence obtained as result of illegal search).

**75.** *Brooks v. State,* 990 S.W.2d 278, 286 (Tex. Cr.App.), *cert. denied,* 528 U.S. 956, 120 S.Ct. 384, 145 L.Ed.2d 300 (1999).

Because the appellant did not object to the admission of the testimony of which he now complains, the question he seeks to present has not been preserved for review on appeal.

### C.

If the State's confession of error in the Supreme Court implicates any federal-law claim, it must be that the Fourteenth Amendment requires this Court to hold that the admission of Dr. Quijano's evidence is a reversible error. No such claim has been presented to us, much less decided by us.

The Attorney General and other *amici curiae* say that the Supreme Court's action in granting review is a binding determination that the appellant's Fourteenth Amendment claim has been decided by this Court. *Amici* attach too much significance to the Supreme Court's decision to grant the petition, summarily vacate our judgment, and remand the case to us "for further consideration in light of the confession of error by the Solicitor General of Texas." [76]

■■■ The Supreme Court has, of course, not only jurisdiction to determine its jurisdiction, but also a duty to determine for itself precisely the ground on a which a state court's judgment rests. [77] Here the Supreme Court was presented, on the one hand, with the opinion of this Court that decided the case on state-law grounds and, on the other, a petition for certiorari that presented a federal question and a response that admitted there had

been a federal error. It is not surprising that the Supreme Court should exercise its jurisdiction to have the case clarified before making a final decision as to its jurisdiction.

### D.

If the State's confession of error be construed as a confession that the Fourteenth Amendment requires reversal of a conviction because of the introduction of Dr. Quijano's testimony, without objection, we cannot agree. The appellant has not demonstrated how his constitutional claim is different from the ones we have held forfeited in the past, except by directing our attention to *Zant v. Stephens*. [78] The appellant cites *Zant* for the proposition that a death sentence must be set aside if an aggravating factor is attached to factors that are constitutionally impermissible or totally irrelevant to the sentencing process. He relies on this passage from *Zant*:

> Respondent contends that the death sentence was impaired because the judge instructed the jury with regard to an invalid statutory aggravating circumstance, a "substantial history of serious assaultive criminal convictions," for these instructions may have affected the jury's deliberations. In analyzing this contention it is essential to keep in mind the sense in which that aggravating circumstance is "invalid." It is not invalid because ... Georgia attached the "aggravating" label to factors that are constitutionally impermissible or totally irrelevant to the sentencing process, such as for example the race, religion, or

---

76. *Saldano v. Texas*, 530 U.S. 1212, 120 S.Ct. 2214, 147 L.Ed.2d 246 (2000).

77. *See Black v. Cutter Laboratories*, 351 U.S. 292, 298, 76 S.Ct. 824, 100 L.Ed. 1188 (1956).

78. 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).

political affiliation of the defendant, *cf. Herndon v. Lowry,* 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066 (1937).... If the aggravating circumstance at issue in this case had been invalid for reasons such as these, due process of law would require that the jury's decision to impose death be set aside.[79]

This *obiter dictum* is of little help to the appellant, for examination of the authority there cited demonstrates that the requirement of objection applies to such a case.

The question in *Herndon v. Lowry* was whether the statute under which Herndon was convicted for attempting to incite insurrection was so vague as applied to him as to violate the constitutional guaranties of freedom of speech and assembly embodied in the Fourteenth Amendment.[80] He first tried to raise this claim in the Supreme Court on appeal from his conviction, but the Court held it had no jurisdiction of such a federal claim since the state court's judgment was based on his failure to preserve the question by specific and timely exceptions and assignments of error.[81] Only when the state courts agreed to consider the federal grounds in habeas corpus proceedings was Herndon able to seek further review.[82] Far from supporting the appellant's contention that equal-protection claims are excepted from the requirement to object, the Supreme Court's decisions hold the opposite.

### E.

■ We conclude that the State's confession of error in the Supreme Court is contrary to our state's procedural law for presenting a claim on appeal, as well as the Supreme Court's enforcement of such procedural law when it is presented with equal-protection claims. If any decision of any court in this country would support another conclusion, the appellant, the Attorney General and other *amici,* and the dissenting opinion have not informed us of it.

After our independent examination of the claim, we hold that no complaint about Dr. Quijano's testimony is presented for appellate review because the appellant did not make an objection to the testimony as our law has always required. Under that law a decision on the admissibility of evidence that there is a correlation between ethnicity and recidivism cannot be reached, and we express no view on that issue.

The judgment of the trial court is affirmed.

PRICE, and JOHNSON, JJ., dissent in Part II.

KELLER, P.J., filed a concurring opinion in which KEASLER, HERVEY, and COCHRAN, JJ., joined.

PRICE, J., filed a dissenting opinion.

JOHNSON, J., filed a concurring and dissenting opinion.

KELLER, P.J., filed a concurring opinion in which KEASLER, HERVEY, and COCHRAN, JJ., joined.

The dissenting opinions do a disservice to counsel for appellant, who put forward

---

79. *Zant,* 462 U.S. at 885, 103 S.Ct. 2733.

80. *See Herndon,* 301 U.S. at 264, 57 S.Ct. 732.

81. *See Herndon v. Georgia,* 295 U.S. 441, 442–43, 55 S.Ct. 794, 79 L.Ed. 1530 (1935).

82. *See Herndon v. Lowry,* 301 U.S. 242, 247, 57 S.Ct. 732, 81 L.Ed. 1066 (1937) ("The scope of a habeas corpus proceeding in the circumstances disclosed is a state and not a federal question and since the state courts treated the proceeding as properly raising issues of federal constitutional right, we have jurisdiction and all such issues are open here").

and ably argued a proposed legal basis for granting relief. The Court's opinion addresses appellant's arguments and explains why they must fail. The dissenters, on the other hand, offer no attempt to defend appellant's actual legal position (or to rebut the Court's rejection of that position), preferring instead to rely upon the persuasive power of catchy phrases. It appears that the dissenters find appellant's legal theory indefensible-their only argument is that it "ought to be" the law.[1]

I join the Court's opinion.

PRICE, J., filed a dissenting opinion.

A sentencing jury may not consider a defendant's race when deciding whether to impose the death penalty. During the punishment phase of the appellant's capital murder trial, evidence admitted made a correlation between future dangerousness and the incarceration rates of Hispanics. Because the only relevant inference to be drawn from such evidence is an improper

one, I would reverse the appellant's death sentence. Therefore, I dissent.

The majority begins by discussing the Attorney General's authority to represent the State and to confess error in proceedings before the United States Supreme Court.[1] I think we need not address these issues. Dr. Quijano's testimony during the punishment phase of the appellant's trial drew a correlation between the appellant's race and incarceration rates. I would hold that the admission of this evidence was fundamental error, which should be reviewed even in the absence of a trial objection.

The *only* relevant inference to be drawn by the jury from the evidence at issue was an impermissible one. Hispanics are dangerous because they are over represented in the prison population. The appellant is Hispanic. Therefore, the jury could have concluded, the appellant constitutes a future danger.

The analogy of a skunk in the jury box is instructive. Racial prejudice can sneak

---

1. *Saldano v. State*, 70 S.W.3d 873 (Tex.Crim. App. delivered March 13, 2002)(Price, J., dissenting).

1. It may be unnecessary to address these issues in light of our decision in *Mitchell v. State*, 68 S.W.3d 640 (Tex.Crim.App.2002). In *Mitchell*, we did not address the merits of a point the State had conceded in an earlier proceeding. We explained:

> The State argues that the court of appeals erred by holding that the appellant's trial counsel was deficient because the record does not show that his action was not a tactical decision. The State is foreclosed from raising that argument at this stage of the process. In its petition for discretionary review of the first decision of the Court of Appeals, the State conceded counsel's performance was deficient.... It is too late for the State to reverse its decision on the deficiency-of-performance part of the *Strickland* standard.

*Id.*, 68 S.W.3d at 642–43. Having relied on the Attorney General to respond on its behalf before the Supreme Court, the State should not be heard now to complain of the Attorney General's confession of error. The same complaint from a criminal defendant whose lawyer conceded error in a prior proceeding, certainly, would not be heard by this Court.

When this case was before us on direct appeal, we reviewed the error under then Texas Rule of Criminal Evidence 103(d) after noting that the appellant did not object to the admission of the evidence at trial. *Saldano v. State*, No. 72,556 slip op. at 10 (Tex.Crim. App. Sept. 15, 1999) (not designated for publication) ("The appellant urges this Court to consider his complaint under Rule of Criminal Evidence 103(d) as fundamental error. we cannot say that the admission of Dr. Quijano's testimony of which the appellant complains was fundamental error."). The Attorney General conceded error in response to the appellant's petition for certiorari to the United States Supreme Court.

into the jury box while making the jury's verdict on punishment seem legitimate.

By design, the decision that a capital sentencing jury makes is a "highly subjective, 'unique, individualized judgment regarding the punishment that a particular person deserves.'" *Caldwell v. Mississippi*, 472 U.S. 320, 340 n. 7, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) (quoting *Zant v. Stephens*, 462 U.S. 862, 900, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (Rehnquist, J., concurring)). This range of discretion creates "a unique opportunity for racial prejudice to operate but remain undetected." *Turner v. Murray*, 476 U.S. 28, 35, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986) (White, J., joined by Blackmun, Stevens, and O'Connor, J.J.). We need to guard jealously the sentencing phase of a capital trial to keep prejudice from ruining the process.

It is our job to be sure that racial prejudice is not, *in any way*, a component of the jury's decision to impose the death penalty. Texas Rule of Evidence 103(d) provides a vehicle by which we can review fundamental error. In *Marin v. State*, 851 S.W.2d 275 (Tex.Crim.App.1993), we explained that, in our system, three kinds of rules exist: "(1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request." *Id.* at 279. If the right to a capital sentencing proceeding without the taint of racial prejudice is not a right that requires, *at least*, an affirmative waiver, *it ought to be*.

That the State did not emphasize this unfairly prejudicial evidence in its closing arguments does not affect the analysis. A skunk whether hurled or merely tossed into the jury box still fouls the air.

That there may have been ample evidence supporting a finding of future dangerousness and that there were factors other than race included in Dr. Quijano's testimony are of no moment. If a skunk is allowed into the jury box, nothing will remove its stench.

I cannot condone a decision to impose the death penalty when I am uncertain whether racial prejudice was a component of that decision. I dissent.

JOHNSON J., filed a concurring and dissenting opinion.

I join the opinion of the Court as to Part I. I respectfully dissent as to Part II. I do not think that race or ethnicity should ever be a consideration, in any degree, in the assessment of punishment.

It is beyond settled that using race or ethnicity as a basis for finding guilt is constitutionally barred. U.S. Const. Amend. XIV, § 1; Tex. Const. Art. I, § 3a. Neither is such a use permissible in determining an appropriate punishment. *Baldwin v. Alabama*, 472 U.S. 372, 382, 105 S.Ct. 2727, 2733, 86 L.Ed.2d 300, 309 (1985); *Zant v. Stephens*, 462 U.S. 862, 885, 103 S.Ct. 2733, 2747, 77 L.Ed.2d 235, 255 (1983). It is impossible to determine to what extent an assertion of race or ethnicity as an indicator of criminality or future dangerousness influences the deliberations of a given jury. Neither can we gauge the effect on the jury of the cross-examination of the original witness or the effect of any defense expert called to rebut such use of race or ethnicity. In one case, an instruction to the jury to disregard such testimony may be sufficient, in another case it may not. We can identify neither the cases in which such an instruction cures any error nor the cases in which the instruction serves to emphasize and exacerbate the error.

Allowing the kind of testimony complained of here violates one of the most fundamental principles of our legal system: a citizen must be found guilty and given appropriate punishment because of what he did, not who he is. It is even more important to stoutly defend that principle when the potential consequence of a violation is as severe as it is here. To do less is to put a cloud over the state's right to execute this appellant. I would remand for a new punishment hearing.