IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS


GARY CLIFFORD ABBOTT,                           §     APPEAL FROM THE 
APPELLANT

V.                                                                         §     COUNTY COURT AT LAW NO. 2 OF

THE STATE OF TEXAS,
APPELLEE                                                        §     SMITH COUNTY, TEXAS





MEMORANDUM OPINION
            Appellant Gary Clifford Abbott appeals his conviction for insurance fraud. In four issues,
Appellant asserts that the evidence is not legally or factually sufficient to support his conviction and
that the trial court imposed unreasonable conditions of community supervision. We affirm.

Background
            Appellant was charged by indictment with insurance fraud.


 The indictment alleged that, on
or about December 30, 2001, in Smith County, Texas, Appellant, 
 
with intent to defraud or deceive an insurer, namely Encompass, present[ed] to said insurer in support
of a claim for payment under a property and casualty insurance policy, the value of said claim being
$1,500 or more but less than $20,000, a statement that the defendant knew contained false or
misleading information concerning a matter affecting the right of the defendant to a payment, and the
matter was material to the claim in that it concerned whether property was damaged or lost in the
manner and under the circumstances described in a statement related to a claim for insurance
payment.


 

Appellant pleaded “not guilty.” 
            At his trial, a jury found Appellant guilty of the charge as alleged in the indictment. After
ordering a presentence investigation report, the trial court assessed punishment at two years of
confinement in a state jail facility, probated for five years with one hundred days as shock probation. 
The court also ordered Appellant to pay a fine and restitution. Additionally, the court ordered
weekly reports from Appellant concerning matters of his business, buying and selling automobile
parts. This appeal followed.
Evidentiary Sufficiency
            In his first and second issues on appeal, Appellant argues that the evidence is legally and
factually insufficient to support his conviction. More specifically, Appellant contends there is no
evidence that he “caused to be prepared or presented to the insurer a statement he knew contained
false or misleading information.” 
Standard of Review
            “Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction.” Escobedo v. State, 6 S.W.3d 1, 6 (Tex.
App.–San Antonio 1999, pet. ref’d) (citing Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S.Ct.
2781, 2786-88, 61 L. Ed. 2d 560 (1979)). The standard of review is whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson, 443
U.S. at 319, 99 S.Ct. at 2789; LaCour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). The
evidence is viewed in the light most favorable to the verdict. Jackson, 443 U.S. at 319, 99 S.Ct. at
2789; LaCour, 8 S.W.3d at 671. The conviction will be sustained “unless it is found to be irrational
or unsupported by more than a ‘mere modicum’ of the evidence.” Moreno v. State, 755 S.W.2d 866,
867 (Tex. Crim. App. 1988). The jury is the sole judge of the credibility of witnesses and of the
weight to be given their testimony. Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). 
Any reconciliation of conflicts and contradictions in the evidence is entirely within the jury’s
domain. Id. The jury is entitled to draw reasonable inferences from the evidence. Benavides v.
State, 763 S.W.2d 587, 588-89 (Tex. App.–Corpus Christi 1988, pet. ref’d). If a reviewing court
finds the evidence legally insufficient to support a conviction, the result is an acquittal. Tibbs v.
Florida, 457 U.S. 31, 41-42, 102 S.Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982). 
            When reviewing the factual sufficiency of the evidence, we review all of the evidence, but
not in the light most favorable to the prosecution. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997). We must determine whether a neutral review of the evidence, both for and against the
finding, demonstrates that a rational jury could find guilt beyond a reasonable doubt. Zuniga v.
State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). Evidence is factually insufficient when
evidence supporting the verdict, considered by itself, is too weak to support the finding of guilt
beyond a reasonable doubt. Id. Evidence is also factually insufficient when contrary evidence is so
strong that the beyond a reasonable doubt burden of proof could not have been met. Id. at 484-85.
Our evaluation should not substantially intrude upon the jury’s role as the sole judge of the weight
and credibility of witness testimony. Wesbrook v. State, 29 S.W.3d 103, 112 (Tex. Crim. App.
2000).
Legal Sufficiency
            A person commits the offense of insurance fraud if, with intent to defraud or deceive an
insurer, he causes to be prepared or presents to an insurer in support of a claim for payment under
a health or property and casualty policy a statement that he knows contains false or misleading
information concerning a matter that is material to the claim, and the matter affects his right to a
payment or the amount of payment to which he is entitled. Tex. Pen. Code Ann. § 35.02(a).
            Joe Byron Roach, a senior investigator for Appellant’s insurance company, has eighteen years
of experience in law enforcement and fourteen years as an insurance investigator. He investigates
unusual claims. At trial, Roach testified that Appellant filed a theft claim for over $16,000 and that
he denied Appellant’s claim. The court admitted into evidence copies of the initial claim documents
Appellant submitted to the insurance company. The paperwork included a sworn “Affidavit of
Vehicle Theft” that Appellant completed and submitted along with his claim. Additionally, the State
produced a copy of an internal estimate of the damages to Appellant’s vehicle that was prepared by
the insurance company as a direct result of Appellant’s filing his insurance claim. Appellant admitted
submitting the claim for the theft and damage to the truck. 
            Chad Kersey, an officer with the Tyler Police Department, testified that he responded to a
call on December 30, 2001 when Appellant reported his white GMC truck had been stolen. Kersey
noted in his report that he found no broken glass after examining the area of the parking lot of the
Wingate Inn where Appellant said he had left the truck overnight. Jamie Blankenship, a patrol
deputy at the Rusk County Sheriff’s office, testified that on December 30 at 8:30 in the morning, he
saw a stripped white GMC pickup extended cab truck on County Road 186. Blankenship said that
the truck had been stripped “clean,” explaining that the job had been done neatly. For example, he
stated that most stripped vehicles have wires ripped and hoses cut. On this truck, the wires had been
unplugged and he noticed no physical damage to the vehicle other than the parts having been
stripped. Blankenship further explained that, in his experience, most stripped vehicles have wires
“ripped out” because the people committing the crime are in a hurry. 
            Jerry Wallace, owner of a wrecker service, testified that he retrieved the truck from the
county road where Blankenship found it and took it to his place of business. Wallace said that within
a few hours, Appellant picked up his truck, loading it onto a trailer. Wallace noted that this was
unusual for a person who had his vehicle stolen. During his seventeen years in the business, Wallace
had learned that owners of stolen vehicles typically allow the insurance company to handle the
details, including paying his fees for towing the vehicle. Wallace said that although the truck was
parked outside, he would have moved it to the covered garage upon request.
            Gary King, detective with the East Texas Auto Theft Task Force of the Tyler Police
Department, was assigned to the case on January 17, 2002. King said that Appellant never called
him to check on the status of the investigation. At King’s request, Jeffrey Maeker, a sergeant with
the Department of Public Safety Motor Vehicle Theft Service in Tyler, seized the truck from
Appellant’s property on August 14, 2002 on a warrant. Maeker testified that after he seized the
truck, he identified several parts original to the truck that had previously been stripped, but were
back on the truck. Specifically, Maeker identified a door and air bag with numbers matching the
vehicle’s vehicle identification number. Maeker said that owners are typically upset when their
vehicles are sequestered. However, Maeker testified that Appellant did not complain or attempt to
prove to him that he had paid for the parts put back on the truck.
            From this testimony, including all reasonable inferences, a rational trier of fact could have
found that Appellant, with intent to defraud an insurer, prepared a claim for payment that he knew
contained false or misleading information (that his truck had been stolen and damaged). See Tex.
Pen. Code Ann. § 35.02(a). Therefore, viewing the evidence in the light most favorable to the jury’s
verdict, we conclude that a rational trier of fact could have found the elements of insurance fraud
beyond a reasonable doubt.
Factual Sufficiency
            In addition to the evidence discussed above, Appellant and his wife related their version of
the events relating to the insurance claim. Appellant’s wife, Terry Abbott, testified that she had
driven her Corvette to Tyler on December 29 to do some after Christmas shopping. She received
a phone call from Appellant telling her that he was driving from their home and business in Eustace
to Tyler to buy some parts from the Harley dealership. She met him at the dealership where they
discovered that the store was closed for inventory. They left the truck there and drove the Corvette
around Tyler looking at classic cars. Later, they decided to spend the night in a Tyler hotel. They
picked up Appellant’s truck and drove both vehicles to the hotel. After checking into the hotel, the
couple drove the Corvette to dinner. They then decided to drive back home, get some clothes, and
check on their pets. 
            On the drive home, they hit a bag of leaves. Upon arriving at their home, Appellant put the
Corvette up on a lift to check for damage. Terry gathered their clothing and watched television.
Once Appellant finished working on the Corvette, the couple drove back to Tyler, arriving at the
hotel between 1:00 and 2:00 in the morning. Around 10:00 the next morning, Appellant walked out
to the hotel parking lot. He saw that his truck was missing, and he called the police to report that
his vehicle had been stolen. After giving their report to an officer, the couple started home. On the
way to Eustace, the police department called, saying they had found Appellant’s truck.
            Appellant’s wife testified that after they recovered the stripped vehicle, she eventually ran
an ad in the newspaper. The ad ran from June 26 to July 7, 2002 and read, “REWARD: $4,000, no
questions asked for parts taken from 2001 GMC pickup on Dec. 30 in Tyler, TX. . . .” She explained
that since they owned an auto repair shop, they were in a good position to repair the truck
themselves. Further, obtaining the original parts would be more cost efficient than buying
replacement parts. 
            Appellant testified on his own behalf. He said that buying vehicles both to collect and trade
is his hobby. Of the ten to twenty vehicles that they owned at the time of this incident, the GMC
truck was the only vehicle that was not paid in full. The truck was fully insured while the paid
vehicles were not. 
            Appellant testified about his extensive background in automotive repair, totaling over thirty
years of experience. Prior to starting his own business, he last worked for a body shop owned by an
insurance company. Appellant stated that he was familiar with how insurance claims are paid,
having worked with the insurance aspect of the auto repair business for approximately ten years. 
            Appellant explained that after hitting the bag of leaves on the way to his house, he lost track
of time as he was repairing the damage to the Corvette’s spoiler. Once he stopped working, he asked
his wife if she still wanted to return to the hotel in Tyler. She stated that she did, and Appellant
estimated that they got back to the hotel around 2:30 in the morning. They parked the vehicle they
were driving on the other side of the hotel. Upon awaking that morning, they used the swimming
pool and hot tub before packing to leave.
            Before the vehicle was stripped, Appellant last saw it when he parked it in the hotel parking
lot upon checking into the hotel. It was not until 10:00 the next morning as they were about to check
out that Appellant noticed that his truck was missing. After speaking to the police officer and
checking out of the hotel, Appellant received a phone call on his cell phone as they were driving
back to Eustace. The sheriff’s department called to say that his vehicle had been found, but it was
stripped. Appellant then called the wrecker service where his truck had been towed and made
arrangements to pick it up later that day. Appellant was anxious to get it to his garage where, unlike
at the wrecker yard, it would be covered and protected from the weather. He testified that upon
recovering the truck from the wrecker yard, a number of parts were missing, including the front and
rear bumpers, grill, fenders, hood, core support, fan shroud, air conditioning control, radiator, left
front door, rear doors, tailgate, bed liner, trailer hitch, tires, and wheels. The wires to the air
conditioning control and the left front door had been cut. All other wires had been unhooked. 
            Appellant claimed to have called detective King several times to check on the progress of the
investigation. Appellant denied paying someone to steal and strip his truck or doing it himself. He
said he learned that the hotel did not have security cameras at the hotel only after this incident. 
Appellant stated that he and his wife decided to run the ad for the stolen parts after the insurance
company denied his claim. He testified that after they placed the ad, they received a phone call from
a woman claiming to know the location of the parts. Appellant met two women in their 40s at
Walton, Texas. He checked the hood, which he knew to be from his truck because of a flaw in the
paint job.  He gave them $4,000 in cash although they did not have all of the missing parts. 
Appellant spent an additional $2,500 on replacing the other missing parts. He said he did not report
the women because he was interested only in getting the parts back. He explained that no cash
withdrawal showed on his bank account for these transactions because he kept at least that much
cash on hand for his business dealings.
            Appellant continued to make payments on the truck even after the police impounded his
vehicle. Appellant testified that he thought the truck had been stolen because “Chevrolet General
Motor trucks are stolen so often, and there’s so many theft rings.”  
            The jury may choose to believe some testimony and disbelieve other testimony. See
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Here, the jury determined the
credibility of the witnesses and resolved the evidentiary inconsistencies in the State’s favor, which
is its prerogative as fact finder. Losada, 721 S.W.2d at 309. In performing its function, the jury
chose not to accept the version of the facts presented by Appellant and his wife. Consequently,
viewing the evidence in a neutral light, we cannot say that the evidence supporting the verdict,
considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt. Nor can
we conclude that the contrary evidence is so strong that the beyond a reasonable doubt burden of
proof could not have been met. Therefore, we conclude that the evidence was factually sufficient
for the jury to find Appellant guilty of insurance fraud as charged in the indictment. Accordingly,
Appellant’s first and second issues are overruled.
Court’s Imposition of Community Supervision Requirements
            In his third and fourth issues, Appellant asserts that the trial court imposed unreasonable
conditions of community supervision when it ordered him to pay restitution to the insurance
company and to submit an inventory to the East Texas Task Force every fifteen days detailing every
part or complete automobile owned by Appellant. The State asserts that Appellant waived his third
and fourth issues. We agree.
            To preserve error for appellate review, a party must make a timely, specific objection and
obtain a ruling. Tex. R. App. P. 33.1(a); Saldano v. State, 70 S.W.3d 873, 889 (Tex. Crim. App.
2002). A defendant “must complain at trial to the [community supervision] conditions he finds
objectionable.” Rickels v. State, 108 S.W.3d 900, 902 (Tex. Crim. App. 2003). Failure to complain
at trial constitutes a waiver of any complaints a defendant may have had on appeal. Id. In this case,
Appellant failed to object when the trial judge sentenced him. Accordingly, any complaint is
waived. We overrule Appellant’s third and fourth issues.
 
Disposition
            Having overruled each of Appellant’s issues, the judgment of the trial court is affirmed.

                                                                                                     JAMES T. WORTHEN 
                                                                                                                 Chief Justice


Opinion delivered December30, 2005.
Panel consisted of Worthen, C.J. and Griffith, J. 
DeVasto, J., not participating.
























(DO NOT PUBLISH)