Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-09-00456-CR

Ralph **OROZCO** Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-6783
Honorable Ron Rangel, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  September 29, 2010

AFFIRMED

Appellant Ralph Orozco Jr. was indicted on three counts of aggravated sexual assault of a

child, and one count of indecency with a child by sexual contact. A jury found Orozco guilty of

one count of aggravated sexual assault of a child and one count of indecency with a child. After

Orozco pled true to two felony enhancements, the trial court sentenced him to seventy years

confinement in the Texas Department of Criminal Justice–Institutional Division. Orozco

appeals, contending in eight issues that: (1) he was denied a unanimous verdict, (2) he was

denied his right to a fair and impartial jury, (3) the trial court erred in denying his motion for new trial based on jury misconduct, and (4) the evidence was factually insufficient to support the verdict. We affirm the trial court's judgment.

## BACKGROUND

Orozco and Eric T. met when they attended school together. Eric testified he began giving Orozco a ride home, and eventually invited Orozco and his family to his house. It was then Orozco met Eric's children, including ten-year-old complainant, E.T. In June 2006, after finishing some exams, Eric again agreed to give Orozco a ride home, but according to Eric, Orozco asked to be dropped off at the home of a woman. However, later that evening Orozco called Eric and asked to be picked up. Eric testified that when he picked up Orozco, Orozco asked if he could spend the night at Eric's house; Eric agreed.

When the men arrived at Eric's house, they drank beer and watched television. Eric stated that his daughters, E.T., and her two sisters, were asleep downstairs on a sleeper sofa in front of the big screen television. Eric said he went to bed around 12:00 a.m., but before he went to bed, he either (1) took Orozco upstairs and showed him a bedroom where he should sleep, or (2) pointed upstairs and told Orozco there was a bedroom upstairs where he should sleep. Eric testified he made it clear Orozco was to sleep upstairs. According to Eric, Orozco said, "I'm going up there in five minutes." When Eric went to bed, Orozco was downstairs with the children.

E.T. testified Orozco did not go upstairs–at least not immediately and not alone. E.T. stated that Orozco woke her up around 4:00 a.m. when he slammed the sliding glass door. E.T. said she knew the time because she could see the clock on the digital video recorder. E.T. testified that when he came into the room, Orozco asked her if she wanted to go upstairs. Even

though she said "no," Orozco picked her up and carried her, "kind of like . . . carrying a baby," upstairs to the guest room and put her down on the bed. According to E.T., Orozco told her to look at the window, and while she was looking at the window he "started taking off his clothes." E.T. said she could tell he was taking off his clothes by the sounds he was making. When Orozco finished, he asked E.T. if she was "going to share the covers with [him]." E.T. said "no," but he removed the blanket she was wrapped in and put her under the bed covers. E.T. testified that Orozco then got on top of her, grabbed her hand, and "made [her] touch his middle part," which she described as the part used to go to the restroom. When asked by the prosecutor what it felt like, E.T. said it was "wet." She also said that when she tried to remove her hand, he would put it back. At this point, E.T. tried to leave, but he would not let her go. E.T. stated Orozco then started touching her "private part," the part she uses to go to the restroom. She testified Orozco touched her "private part" with his "finger and his middle part." E.T. specifically stated Orozco put his fingers inside of her. E.T. also testified that Orozco turned her over and "touched [her] bottom" and put his fingers and "middle part" in her bottom. E.T. said it hurt when Orozco put his middle part in her bottom and her middle part.

E.T. told the jury she tried to scream, but Orozco covered her mouth. E.T.'s parents, who were asleep in their bedroom approximately fifteen feet from the guestroom, heard nothing. E.T. testified Orozco threatened her, telling her that if she told anyone he would find her and try to kill her. Orozco then took E.T. back downstairs. E.T. stated that when she woke up, she went to summer school like she always did, but she felt "guilty" and "didn't want to talk" because of what Orozco had done to her. Eric testified E.T. quit summer school that day. Three months

later, E.T. told her mother what happened.[1] She stated she waited because she was "scared [her mother] would hate [her]," and that Orozco would kill her.

Eric testified that the next morning he woke up around 5:30 a.m. and found appellant outside. According to Eric, Orozco "had urine all over himself and smelled really awful." Eric discovered that after Eric went to bed, Orozco continued to drink, finishing approximately a case and a half of Eric's beer. Orozco claimed he was out in the backyard looking at the stars, and could not make it to the restroom in time, which Eric found odd because the restroom was in close proximity to the yard. Eric claimed he later discovered a red blood stain in the guest room. After his conversation with Orozco, Eric woke his daughters and he and Orozco took E.T. to summer school. Thereafter, Eric took Orozco home. Eric testified the last time he saw Orozco was in August 2006 when Orozco stopped by Eric's house. Eric told the jury that when Orozco arrived, E.T. asked her father to "get him out of here and take him away."

J.T., Eric's niece, was called to testify by Orozco. J.T. testified she met Orozco only once, and that was when she was with Eric on an occasion when he picked Orozco up at Wal-Mart. Eric denied this, stating J.T. met Orozco when he stopped by the house one evening before the assault. J.T. stated she slept with E.T. and her sisters whenever she spent the night, and the night Eric picked Orozco up at Wal-Mart, Orozco did not spend the night at Eric's house; rather, Eric took Orozco home. Based on J.T.'s testimony, Orozco contends Eric's testimony is "disproved" and creates doubt with regard to the assault on E.T. However, it appears from reading J.T.'s entire testimony that she was not testifying about events that happened the night E.T. was assaulted, but some other night when she spent the night with her cousins and Orozco was not present. J.T. admitted that the summer E.T. was assaulted, she did not see E.T. at all

---

[1]After E.T.'s outcry, her sister, C.F., also alleged she was assaulted by Orozco on the same night. It is undisputed that E.T. and C.F. were sleeping together on the sleeper sofa downstairs the night E.T. claimed she was assaulted.

because J.T. was grounded. Moreover, she stated that she did not believe E.T. lied about the assault.

After E.T.'s outcry to her mother, E.T. was taken to Child Safe. E.T. was ultimately examined by Betty Mercer, a sexual assault nurse examiner (SANE), who worked in the Christus Santa Rosa Children's Hospital emergency room. The exam took place on September 28, 2006. According to Mercer, E.T. gave an account of the assault. This account is consistent with E.T.'s trial testimony. Mercer testified E.T.'s genital exam was normal, and no physical trauma was apparent. However, Mercer stated theses results were "consistent with the history E.T. gave." Mercer explained that any physical trauma from an assault in June "would certainly have been healed" by the time of her exam. Dr. Nancy Kellog confirmed that it is not unusual for abused children to show no signs of physical trauma during an exam. Mercer admitted, however, that the lack of physical trauma could also mean no assault occurred.

The jury ultimately convicted Orozco of two of the four counts alleged in the indictment: (1) count one, aggravated sexual assault of a child by penetrating E.T.'s sexual organ with his finger; and (2) count four, indecency with a child by sexual contact by causing E.T. to engage in sexual contact, i.e., by touching any part of E.T.'s body with some part of his genitals. The jury found Orozco not guilty on counts two and three. After Orozco pled true to two enhancement paragraphs, the trial court sentenced him to seventy years confinement. Orozco filed a motion for new trial, which was denied, and then perfected this appeal.

## ANALYSIS

Orozco raises eight issues on appeal. However, he argues those issues in three groups, contending he was denied a unanimous verdict, the verdict was reached as a result of juror misconduct, and the evidence was factually insufficient to support the verdict.

## *Non-unanimous Verdict*

In his first four issues, Orozco contends his rights secured by article 36.29(a) of the Texas Code of Criminal Procedure, article V, section 13 of the Texas Constitution, and the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution were violated because he was convicted on less than a unanimous verdict. He further contends this caused him egregious harm.

Under the Texas Constitution, jury unanimity is required in felony cases, and under the Texas Code of Criminal Procedure, jury unanimity is required in all criminal cases. *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005); *see* TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. arts. 36.29(a), 37.02-.03 (West 2006 & Supp. 2009). "Unanimity in this context means that each and every juror agrees that the defendant committed the same, single, specific criminal act." *Ngo*, 175 S.W.3d at 745; *see Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007) (holding unanimity ensures all jurors reach consensus on same act for conviction).

Although guised generally as a challenge to a lack of unanimity, Orozco actually argues the trial court erred in failing to instruct the jury that in order to find Orozco guilty on any one count, it had to unanimously agree to his guilt on that count. More specifically, Orozco contends the trial court erred, and he suffered egregious harm, because the jury charge lacked a general instruction on unanimity, and lacked separate unanimity instructions in each application paragraph. Orozco asserts the jury charge "misled the jury into believing that only its ultimate verdict of guilty need be unanimous." According to Orozco, without the unanimity instructions, "some jurors could have believed that [Orozco] was guilty of some counts and some jurors could have believed he was guilty of other [sic], and then simply agreed to find him guilty of both counts 1 and 4 and not of counts 2 and 3."

In support of his argument, Orozco relies upon two decisions from the court of criminal appeals in which the court determined jury charges contained error because they permitted the jury to find a defendant guilty on less than a unanimous verdict. *See Pizzo*, 235 S.W.3d at 719; *Ngo*, 175 S.W.3d at 745, 750. However, as the State points out, the cases relied upon by Orozco to support his complaint are distinguishable. The cases relied upon by Orozco were cases in which the jury charges contained application paragraphs that submitted distinctive offenses disjunctively. *See id.*

Here, the jury was advised within the general portion of the charge that it was to reach a unanimous verdict: "After you have reached a unanimous verdict the Foreman will certify thereto by filling in the appropriate forms attached to this charge and signing his or her name as Foreman." This is similar to the general instruction the court found insufficient in *Pizzo* and *Ngo*. However, unlike *Pizzo* and *Ngo*, the jury charge in this case set out separate and distinct application paragraphs, on separate pages, for each count of the indictment, mimicking the four counts alleged in the indictment. Unlike *Pizzo* and *Ngo*, the applications paragraphs were not submitted disjunctively, i.e., they were not structured so as to permit the jury to find a general, single verdict of guilt if they believed Orozco was guilty of one count but not another. Nor did it authorize a general verdict of guilt if some jurors believed Orozco was guilty of one count, and others believed he was guilty of some other count. Rather, as structured, the jury charge required the jury to deliberate and respond "guilty" or "not guilty" as to each specific offense for which Orozco was indicted and tried. And, the jury charge contained a separate verdict form for each separate and distinct count. On the verdict forms for counts one and four, the foreperson signed beneath the "guilty" paragraph, but on the verdict forms for counts two and three, the foreperson signed beneath the "not guilty" paragraph.

Moreover, after the verdict forms were returned to the court, the trial court asked the jury whether the verdict was unanimous, and the foreperson responded, "yes." The trial court then read each verdict out loud and polled the individual jurors as to whether they agreed with the verdict in each count. To a person the jurors responded that the verdicts returned were their verdicts.

It is evident that the verdicts in this case were unanimous. However, even if we were to agree with Orozco that the trial court erred in failing to provide additional instructions on unanimity, we hold Orozco did not suffer egregious harm from such error.

Orozco admittedly did not object to the absence of individual unanimity instructions in the jury charge. In fact, when asked by the trial court if he had any objection to the jury charge, Orozco's counsel responded "no." When a defendant fails to object to an alleged error with regard to an instruction in the jury charge, the record must show he suffered actual, rather than merely theoretical, harm from the error, i.e., egregious harm. *Ngo*, 175 S.W.3d at 750. Egregious harm results when the alleged error affects "the very basis of the case," "deprive[s] the defendant of a valuable right," or "vitally affect[s] a defensive theory." *Id.* (quoting *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)). To determine whether a defendant suffered egregious harm, we must look at the entire jury charge, the state of the evidence, arguments of counsel, as well as any other relevant information in the record. *Ngo*, 175 S.W.3d at 750 n.48.

Based on our review of the record, we can find no reason to believe each verdict was anything less than unanimous, and therefore we find no egregious harm. As discussed above, the jury charge contained a general instruction on unanimity, provided wholly separate application paragraphs for each offense, and individual verdict forms for each offense. As for the evidence,

Orozco's strategy was to attempt to show inconsistencies in the testimony of the witnesses so as to convince the jury no assault ever took place. However, E.T. was clear in her testimony as to the details of the assault, and any inconsistencies were obviously resolved by the jury in favor of conviction. That the jury found Orozco guilty on two, rather than four, counts suggests the jury closely listened to the evidence and convicted Orozco only on those counts for which there was evidence beyond a reasonable doubt. Finally, unlike *Ngo*, the State in this case did not incorrectly advise the jury that it could find Orozco guilty by "mixing and matching" elements from separate offenses. *See* 175 S.W.3d at 750 (prosecutor told venire, and repeated it during closing argument, that if three jurors felt defendant stole credit card and used it, but six thought defendant merely received it, and three thought defendant presented it, defendant was guilty; prosecutor advised "it doesn't matter which one you think he did. It can be a mix and match, whichever one you believe.").

Accordingly, we hold Orozco was not convicted on less than a unanimous verdict, and even if the trial court erred in failing to instruct the jury as suggested by Orozco, Orozco did not establish he suffered egregious harm as a result of such error. We overrule issues one through four.

### *Jury Misconduct*

In his next three issues, Orozco complains about jury misconduct. He first argues rule 606(b) of the Texas Rules of Evidence violates his due process rights and right to a fair and impartial jury under the federal and state constitutions. He further argues the trial court erred in denying his motion for new trial because rule 21.3 of the Texas Rules of Appellate Procedure requires that a defendant receive a new trial when a verdict is decided in a manner other than a

fair expression of the jurors' opinions, or when a jury engages in misconduct that results in an unfair or impartial trial.

The record reflects the jury retired to deliberate on a Friday. At approximately 3:58 p.m. on that Friday, the jury sent out a note signed by the foreperson, stating the jury was "hung." The trial court informed the parties about the note, and advised that it intended to instruct the jury to "please continue with your deliberations." No one objected, and the court so instructed the jury in writing. A few minutes later, the jury informed the court it had reached a unanimous verdict on all counts: guilty on counts one and four, not guilty on counts two and three. After the verdict was entered, Orozco's counsel and the prosecutor spoke to several jurors. According to Orozco, specifically his counsel's affidavit admitted during the hearing on the motion for new trial, one or more jurors related that the foreperson did not "think the defendant was guilty but he didn't know if he was innocent." However, after a female juror told the foreperson God had sent the jury to make a decision and it was the jury's duty to do so, the jury compromised, finding Orozco guilty on two counts and not guilty on two counts, which allowed the jurors to be released from service. Counsel also stated in her affidavit that a juror, the same one that told the foreperson about the jury's duty, told her the foreperson was gay and this disgusted the juror.

Orozco tried to introduce an affidavit from a juror in addition to the one prepared by his counsel, but the State objected, arguing rule 606(b) did not permit the juror to testify about what occurred during deliberations, unless it concerned an outside influence. *See* TEX. R. EVID. 606(b). The affidavit essentially stated the foreperson "was holding out for a not guilty verdict on all counts," but eventually the jury compromised and reached a verdict on all counts. However, it was the juror's belief that the foreperson did not think Orozco was guilty on any count. The trial court denied Orozco's request to admit the juror's affidavit.

Orozco first argues, in issues five and six, rule 606(b), which prevents jurors from testifying "as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent or dissent from the verdict[,]" denied him his right to due process and his right to a fair and impartial jury under numerous provisions of the state and federal constitutions. *Id*.; *see* U.S. CONST. amends. V, VI, & XIV; TEX. CONST. art. I, §§ 10, 19. He argues the rule "clos[es] the door so tightly to the criminal jury room" that it denies his rights to due process and a fair and impartial jury. However, Orozco did not raise such an objection at any time during the hearing on the motion for new trial. We can find no place in the record, nor does Orozco cite us to any, where he objected that the application of rule 606(b) violated his rights under the state or federal constitution.

"A party is not excused from the procedural requirements for objecting at trial merely because an error involves a constitutional right." *Jimenez v. State*, 32 S.W.3d 233, 235 (Tex. Crim. App. 2000). Texas courts have long held that even constitutional guarantees can be waived absent a proper trial objection. *Id*. (citing *Gibson v. State*, 516 S.W.2d 406, 409 (Tex. Crim. App. 1974)). A specific objection is required unless the constitutional right allegedly violated is "waivable only" or "an absolute, systemic requirement." *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002). Very few rights fall into these categories. *See id.* at 888 (listing rights that are waivable only as the right to counsel and trial by jury, and the absolute, systemic requirements as jurisdiction of the person, subject matter jurisdiction, and penal statute's need for compliance with separation of powers doctrine). The rights asserted by Orozco in this case, right to due process and to be tried by a fair and impartial jury, do not fall into either category set out in *Saldano*. Accordingly, a specific objection was required to preserve his

complaint for our review. *See id.* Because no constitutional objection to the application of rule 606(b) was asserted, there is nothing for us to review.

Moreover, even if the complaint had been preserved for our review, the Supreme Court has held that federal rule 606(b), which is extremely similar to the state rule, does not violate a defendant's right to a fair jury trial. *Tanner v. United States*, 483 U.S. 107, 126-27 (1987). Additionally, several Texas courts of appeals have reached the same conclusion regarding rule 606(b) of the Texas Rules of Evidence, holding the rule does not violate a defendant's right to due process or his right to a fair and impartial jury. *See, e.g., Dunklin v. State*, 194 S.W.3d 14, 19-20 (Tex. App.—Tyler 2006, no pet.); *White v. State*, 181 S.W.3d 514, 524-26 (Tex. App.—Texarkana 2005), *aff'd*, 225 S.W.3d 571 (Tex. Crim. App. 2007); *Glover v. State*, 110 S.W.3d 549, 552 (Tex. App.—Waco 2003, pet. ref'd); *Richardson v. State*, 83 S.W.3d 332, 362 (Tex. App.—Corpus Christi 2002, pet. ref'd); *Sanders v. State*, 1 S.W.3d 885, 888 (Tex. App.—Austin 1999, no pet.). We agree with the holdings and reasoning of these courts, and hold rule 606(b) did not violate Orozco's right to due process or his right to a fair and impartial jury. We overrule issues five and six.

Orozco also contends the trial court erred in denying his motion for new trial because rule 21.3 of the Texas Rules of Appellate Procedure compelled the court to grant a new trial. *See* TEX. R. APP. P. 21.3. The grant or denial of a motion for new trial is within the discretion of the trial court. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). Therefore, in reviewing the trial court's decision on a motion for new trial, we use an abuse of discretion standard. *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex. Crim. App. 1993). We reverse a trial court's ruling with regard to a motion for new trial only when its decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Id.* at 695 n.4.

Rule 21.3 states a defendant must be granted a new trial "when the verdict has been decided by lot or in any manner other than a fair expression of the jurors' opinion." TEX. R. APP. P. 21.3. Orozco contends that even if we do not consider the juror's affidavit because of the application of rule 606(b), the affidavit and testimony of his counsel at the motion for new trial hearing is sufficient to show the jurors "came to a compromised verdict" that "was not a fair expression of the jurors' opinions," requiring a new trial under rule 21.3. We disagree.

Orozco seems to suggest that rule 606(b) and rule 21.3 operate independently. This is incorrect. Rules 606(b) and 21.3 work together to define jury misconduct and how a defendant may prove the existence of such conduct. *Hines v. State*, 3 S.W.3d 618, 622 (Tex. App.—Texarkana 1999, pet. ref'd). Rule 606(b) defines what evidence is admissible in proving jury misconduct, i.e., evidence of outside influences improperly brought to bear on a juror, TEX. R. EVID. 606(b), while rule 21.3 limits that permissible evidence to that which is relevant to the indictment or the verdict. TEX. R. APP. P. 21.3. Thus, unless a defendant has evidence that is admissible under rule 606(b), rule 21.3 never comes into play, and therefore would not compel the trial court to grant a new trial. *See Hines*, 3 S.W.3d at 622.

Here, the evidence relied upon by Orozco to support his assertion that he was entitled to a new trial, other than the clearly inadmissible testimony of the juror, was the affidavit and testimony of his attorney. However, that evidence, though admitted by the trial court at the hearing, is nothing more than the attorney's restatement of statements by jurors as to what went on during deliberations. Neither the attorney's affidavit nor her testimony provides any evidence of an outside influence that resulted in an improper verdict. Because such evidence was clearly improper under rule 606(b), it did not compel the trial court to grant a new trial under rule 21.3. We therefore overrule Orozco's seventh issue.

## *Factual Sufficiency*

A verdict must be supported by factually sufficient evidence. *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009). However, unlike a legal sufficiency review, which is a federal due process requirement, a factual sufficiency review "is a creature of state law." *Id.* A factual sufficiency review begins with the assumption that the evidence is legally sufficient to support the verdict. *Id.* Evidence that is legally sufficient may be factually insufficient if (1) the evidence supporting the conviction is "too weak" to support the jury's verdict, or (2) considering the conflicting evidence, the jury's verdict is "against the great weight and preponderance of the evidence. *Id.* (quoting *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). In determining whether the evidence is "too weak" or "against the great weight and preponderance of the evidence, we must consider all of the evidence in a neutral light, and may only find the evidence factually insufficient when necessary to "prevent manifest injustice." *Laster*, 275 S.W.3d at 518 (quoting *Watson*, 204 S.W.3d at 414-15; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)).

In conducting a factual sufficiency review, we must bear in mind that the jury is the exclusive judge of the credibility of witnesses and the weight to be given their testimony. *Jones v. State*, 944 S.W.2d 641, 647 (Tex. Crim. App. 1996). Likewise, reconciling conflicts in the evidence is the jury's exclusive province. *Id.*

Orozco complains the evidence against him came from "biased witnesses, such as the complainant and her parents," and much of that evidence was contradicted by an unbiased witness, J.T., the victim's cousin. We have reviewed J.T.'s testimony and find it does not necessarily conflict with testimony presented by E.T. or her parents. A review of the evidence establishes J.T. was not really sure when she met Orozco or when the assault itself occurred.

Moreover, even if her testimony conflicted with that of E.T. and her parents, the jury was entitled to resolve the conflicts, given the evidence, in favor of conviction. *See id.* Orozco also argues Eric is not to be believed because on the witness stand Eric "made up evidence" about finding a blood stain on the guestroom bed, when he never notified authorities about the stain, never took a picture of it, and never mentioned it until he was on the stand. While suspicious, it was up to the jury to believe or disbelieve Eric's statements regarding the blood stain. *See id.*

Orozco points out that the testimony from the SANE nurse, Mercer, and that of Dr. Kellogg was uncorroborated by any physical evidence. We agree. However, both testified that in cases like E.T.'s, when the exam occurs months after the alleged assault, no physical trauma may exist. The jury was entitled to believe their testimony. *See id.*

Orozco urges that when the totality of the State's evidence is considered, the State's theory is without merit. Orozco argues it is unbelievable that he drank a case and a half of beer by himself in a little over five hours, as Eric testified. He further argues it is even more unbelievable to think that if Orozco had done as Eric testified, that Orozco would then have been able to go inside, carry E.T. upstairs, and assault her, without anyone being aware of what happened. However, we must reiterate that it was the jury's province to weed the credible from the incredible and to believe or disbelieve some or all of a witness's testimony.

Given the applicable standard, we cannot say the evidence is too weak or so against the great weight and preponderance of the evidence so as to render the jury's verdict manifestly unjust. *See Laster*, 275 S.W.3d at 518. E.T.'s testimony, as set forth in the background portion of this opinion, was sufficient to sustain the jury's verdict in the case. We therefore overrule Orozco's eighth issue.

## CONCLUSION

Based on the foregoing, we affirm the trial court's judgment

Marialyn Barnard, Justice

Do Not Publish