

IN THE
TENTH COURT OF APPEALS

_____

No. 10-11-00408-CR

TRISTAN LANDERS AKA TRISTAN MCNIEL,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

From the 54th District Court
McLennan County, Texas
Trial Court No. 2010-1101-C2

## MEMORANDUM OPINION

Tristan Landers a/k/a Tristan McNiel appeals from her conviction for the offense of tampering with a witness. TEX. PEN. CODE ANN. § 36.05(a)(1). Landers complains that the evidence was insufficient to prove an intent to coerce a prospective witness and that the trial court improperly imposed the cost of the attorney pro tem and investigator as court costs. We affirm the judgment of the trial court.

*Sufficiency of the Evidence*

Landers complains that the evidence was insufficient for the jury to have found that she had an intent to coerce a witness. Section 36.05(a)(1) of the Penal Code, entitled "Tampering with Witness," provides that a person commits the offense of tampering with witness if, with intent to influence a witness, she coerces a witness or prospective witness in an official proceeding to testify falsely. TEX. PENAL CODE ANN. § 36.05(a)(1). The Penal Code defines "coercion" in relevant part as "a threat, however communicated … to expose a person to hatred, contempt, or ridicule…." TEX. PEN. CODE ANN. § 1.07 (a)(9)(D).

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (*citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The jury, as the factfinder, is the sole judge of the credibility of witnesses and the weight to be given to their testimonies, and we will not usurp this role by substituting our own judgment for that of the jury. *Id*. at 899. Our duty is simply to ensure that the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged. *Williams v. State*, 235 S.W.3d 742, 750, 753-54 (Tex. Crim. App. 2007). When we are faced with a record that supports contradicting inferences, we presume that the jury resolved

any such conflicts in favor of the verdict, even if that resolution is not explicitly stated in the record. *Brooks*, 323 S.W.3d at 900 n.13 (*citing Jackson*, 443 U.S. at 326).

*Facts*

Shortly after Landers got married to Jeremy Landers, her 9-year-old daughter, A.M., made an allegation of sexual assault against Jeremy Landers to a family friend in late August of 2008. The family friend convinced A.M. to tell Landers's aunt, with whom A.M. spent a significant amount of time. Landers's aunt called Landers to tell her about the outcry and took A.M. to the police department. Landers met them there and they made a report to the police. A.M. later gave a forensic interview regarding the incident and Jeremy Landers was arrested and ultimately convicted of the offense. The Department of Family and Protective Services became involved when the initial allegation was made and required Landers to sign a safety plan that she would not allow Jeremy Landers to have any contact with the children. At this point, the Department and the police believed Landers would be protective of A.M. and her siblings.

Shortly after Jeremy Landers's arrest in September of 2008, however, Landers's attitude toward A.M. changed. A.M. became convinced that her mother did not believe her regarding the allegations. Landers would openly tell others that A.M. was lying. Landers advised the TDFPS investigator that A.M. was recanting and that she may have made up the allegations, although A.M. had not wavered from her allegations to

anyone else. By December of 2008, A.M.'s grades and appearance seriously deteriorated and she became isolated from her friends. She could not discuss Jeremy or her mother without "sobbing uncontrollably."

At some point while A.M. was still living with Landers, A.M. and Landers were sitting together at a dining table and Landers was "trying to get me to say that it didn't happen," according to A.M. A.M. also stated that Landers also said "but you were told that liars go to hell; is that right?" A.M. believed that Landers was trying to get her to change her story. Landers had also told Landers's grandmother who also seemed to not believe A.M. and also expressed that liars go to hell to A.M., which made A.M. feel that more of her family was turning against her.

Additionally, in February of 2009, Landers picked A.M. and her sister L.M. up from school one day and drove them to Dallas without telling them why they were going. An investigator for TDFPS believed that A.M. was taken to a deposition being taken by Jeremy's attorneys. A.M. said that a person was typing down what she was saying during the interview. On the way, Landers told A.M. "not to tell what happened." A.M. said that she was not asked about the sexual assault during the interview. After this trip, A.M. and her siblings were removed from Landers's custody by TDFPS because of Landers's disbelief of A.M.'s story and the significant deterioration of A.M.'s emotional well-being.

Shortly after the removal, a psychological evaluation was performed on A.M. by Dr. Lee Carter. During the evaluation, A.M. brought up the incident and told Dr. Carter that Landers did not believe her and would tell that to others. A.M. discussed the trip to Dallas where she was told "not to tell them what happened," which Dr. Carter felt implied that Landers wanted A.M. to lie about the incident. After making the outcry, A.M. began having stomach aches, problems sleeping, and was hearing voices in her head which were attributed to anxiety and depression. A.M. also told Dr. Carter about the incident at the dining table where Landers was trying to get her to say the abuse did not occur and how she felt that Landers was on Jeremy Landers's side rather than hers.

At a supervised visit with A.M., Landers leaned over and told A.M. words to the effect that she was a liar which made A.M. feel badly. The visits were terminated after this and ultimately Landers voluntarily relinquished her parental rights to A.M. and her siblings approximately six months after Jeremy Landers was convicted.

Landers argues that the evidence was insufficient to establish an intent to coerce A.M. to change her story, that is that there was no actual or implicit threat made as required by the definition of "coercion." We disagree. The jury, as factfinder, was in the position of determining the credibility of the witnesses and to the degree that Landers's statements could contain contradictory inferences, we will presume that the jury resolved those conflicts, if any, in favor of the verdict. *Brooks*, 323 S.W.3d at 899, 900 n.13.

The undisputed evidence showed that Landers repeatedly called A.M. a liar to A.M. directly and to others, which made A.M. feel that others in her family did not believe her either. At the dining table, Landers tried to get A.M. to change her story and to "say that it didn't happen." On the way to Dallas, Landers told A.M. "not to say what happened," which could have reasonably been viewed by the jury as an acknowledgment by Landers that it did, in fact, occur but that Landers wanted A.M. not to disclose it or to lie about it.

The pressure Landers placed on A.M. to change her story led to significant emotional distress, anxiety, and depression. Each time Landers attempted to discredit A.M. or called her a liar in front of others certainly could be considered not only a threat but also as attempts to in fact "expose [A.M.] to hatred, contempt, or ridicule…." TEX. PEN. CODE ANN. § 1.07 (a)(9)(D). Additionally, the jury could reasonably infer that when Landers told A.M. "not to say what happened" on the way to Dallas that she was telling A.M. not to tell the truth. After Jeremy Landers's conviction, Landers choice to sever her relationship with A.M. permanently by relinquishing her parental rights to A.M. and her siblings could reasonably have been viewed by the jury as demonstrating that because her attempted coercive measures failed, Landers followed through on the threat of exposing A.M. to "hatred, contempt, or ridicule" by actually exposing A.M. to "hatred, contempt, or ridicule." We find that the evidence was sufficient. We overrule issue one.

*Imposition of Special Prosecutor and Investigator Fees as Court Costs*

In her second issue Landers complains that the trial court erred by assessing the costs of the special prosecutor and investigator appointed to prosecute her case as court costs against her because it lacked the statutory authority to do so and that the evidence was insufficient to sustain the assessment. The State argues that Landers failed to preserve the error regarding the statutory authority to assess the attorney's fees by failing to object to the trial court. *See* TEX. R. APP. P. 33.1.

Except for complaints involving systemic or absolute requirements, or rights that are waivable only, all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Texas Rule of Appellant Procedure 33.1(a). *See Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004). We do not find that Landers's complaints involve systematic requirements or waivable only rights. *See id.*; *Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002) (discussing examples of waivable only rights). Thus, in order to preserve her complaint for appellate review, Landers was required to make a timely request, objection, or motion with sufficient specificity to apprise the trial court of this complaint. *See* TEX. R. APP. P. 33.1(a); *Johnson v. State*, 365 S.W.3d 484, 491 (Tex. App.—Tyler 2012, no pet.).

Landers further argues that the evidence was insufficient to support the assessment of those costs pursuant to *Mayer v. State*. *See Mayer v. State*, 309 S.W.3d 552 (Tex. Crim. App. 2010). *Mayer* held that when a defendant is found to be indigent

during the proceedings, there is a presumption that the defendant remains indigent unless the State provides evidence of a change in the defendant's financial circumstances that show an ability to repay court-appointed attorney's fees. *Mayer*, 309 S.W. 3d at 557; TEX. CODE CRIM. PROC. ANN. art. 26.04(p). The State contends that the assessment of the attorney pro tem's fees were not assessed pursuant to article 26.05 of the Code of Criminal Procedure and therefore, Landers's ability to pay is irrelevant. Ultimately, however, we need not determine whether article 26.05 applies to the assessment of the fees of the attorney pro tem because the presumption of indigence in *Mayer* did not apply in this case at the time of the assessment. *See* TEX. R. APP. P. 47.1.

In this case, the trial court determined that Landers was not indigent at the outset of the proceedings. Landers was not found to be indigent until after her conviction for purposes of appeal. Therefore, absent any evidence to the contrary, the presumption of indigence does not apply to the proceedings prior to the finding of indigence. Landers does not contend that she was indigent during the trial proceedings or of the sufficiency of the evidence regarding her financial condition prior to the entry of the judgment. We overrule issue two.

*Conclusion*

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed August 30, 2012
Do not publish
[CR25]