In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00312-CR
_____

KELLI DIEDRE SARTIN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 252nd District Court
Jefferson County, Texas
Trial Cause No. 19-33104

OPINION

A jury convicted Kelli Diedre Sartin of murdering her 81-year-old

father—Charles Douglas Sartin.[1] In the punishment phase of her trial,

the jury decided Kelli should be confined to prison for 81 years. Charles

died at his home. Kelli first told police that Charles committed suicide by

[1]Tex. Penal Code Ann. § 19.02.

1

hitting his head and body with his fists, a metal spatula, and a wooden rolling pin. But on being further questioned that day by detectives, Kelli changed her story while giving detectives her recorded statement, she claimed she had acted in self-defense when Charles came at her with a knife, and that she had defended herself by hitting him with the spatula and the rolling pin.

Kelli raised ten issues in her appeal. Six of Kelli's issues challenge the trial court's rulings admitting evidence in the guilt-innocence phase of her trial. Three of Kelli's issues, issues seven through nine, argue the prosecutor engaged in improper argument in the guilt-innocence phase of her trial. In Kelli's last issue, she argues that the attorney who represented her in her trial failed to provide her with effective assistance of counsel.

We hold Kelli's first nine issues were forfeited because they were not properly preserved. As to Kelli's claim of ineffective assistance of counsel, we conclude that it's not firmly founded in the record. A motion for new trial was not filed following the trial, so Kelli's attorney didn't

have the chance to explain the strategy behind the approach he took in Kelli's defense. We will affirm.

Background

Since Kelli doesn't argue the evidence isn't sufficient to support her conviction, we limit our discussion to the information needed to explain the Court's resolution of the issues Kelli has raised in her appeal.

The testimony of the State's pathologist, Dr. Selly Strauch-River, shows that Charles died between four and seven days before September 9, 2019. On September 9, Sergeant Toby Paul went to Charles's home in response to a request the Port Arthur Police Department received to check on his welfare. According to Sergeant Paul, Kelli came outside and told him that four or five days earlier "her dad committed suicide" by hitting himself with a metal spatula and a wooden rolling pin. After Kelli took Sergeant Paul inside the house, she showed him Charles's bedroom. Inside the bedroom, Sergeant Paul found Charles's body on top of his bed.

When Kelli was taken to the police station and questioned further by detectives, she changed her story around three hours into her interview, claiming she acted in self-defense when Charles came at her

with a knife. During the interview on September 9, Kelli told the detectives that when Charles came at her with a knife, she hit him with her fists, a metal spatula, and a wooden rolling pin, but that she didn't intend to kill him.

In all, nine witnesses were called by the State in the guilt-innocence phase of Kelli's trial. Four of these were employed by the Port Arthur Police Department: (1) Sergeant Toby Paul; (2) Marie Kirkland, a crime scene investigator; (3) Detective Thomas Barboza; and (4) Detective Adam Cousins. Of the remaining five witnesses, one testified she was Charles's niece, Charlene Deslatte, and three others testified they considered him a friend: (1) Jerry Eldridge; (2) Belinda Perkins; and (3) Kristi Heid. The State's remaining witness was a forensic pathologist, Dr. Selly Strauch-Rivers. Dr. Struach-Rivers testified that she agreed with the cause of death stated in Charles's autopsy report, written by Dr. John Wayne, who died before the trial. The autopsy report, which was admitted into evidence, states that Charles died due to blunt force injuries to his head consistent with a physical assault.

Kelli called two witnesses to testify in her defense. One of these was Dr. Edward Gripon. He told the jury that individuals with Alzheimer's disease may become violent "particularly if they're thwarted in some way." But Dr. Gripon conceded that he never met or treated Charles. Kelli's remaining witness was Jeffery Boudreaux. Boudreaux testified that he and Kelli were married at one time but had been divorced for several years. Boudreaux explained that after the divorce, he and Charles had remained close and that although Charles had more members of his family than Kelli, Kelli was his sole provider. According to Boudreaux, Charles had Alzheimer's disease, his condition had been deteriorating, and before he died, Charles depended on Kelli for his care.

In its charge, the trial court instructed the jury to determine whether Kelli had murdered Charles and to decide whether Kelli's conduct was not justified by self-defense. The jury found Kelli guilty of "Murder, as charged in the indictment."

## Standard of Review

Kelli's first nine issues hinge on error preservation. To preserve an issue for appellate review, a party must lodge a timely objection and state

5

the specific legal basis for the objection.[2] Preservation is a "systemic requirement[,]" which means that when an issue hasn't "been preserved for appeal, neither the court of appeals nor [the Court of Criminal Appeals] should address the merits of that issue."[3] "Ordinarily, a court of appeals should review preservation of error on its own motion[.]"[4]

Generally speaking, to preserve a complaint for appeal, a party must first present a timely request, objection, or motion in the trial court that states the specific grounds for the desired ruling if it isn't apparent from the context of the record to avoid forfeiting the right to raise it in an appeal.[5] The trial court also must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule.[6] Almost every right— whether constitutional or statutory—is waivable if the party fails to object, move for relief, or ask the trial court for relief before complaining

---

[2]Tex. R. App. P. 33.1(a)(1).
[3]*Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).
[4]*Id.* at 533.
[5]*See* Tex. R. App. P. 33.1.
[6]*Id.*

6

about the alleged error in a later appeal.[7] There are, however, two relatively small categories of errors that are exceptions to the general rule, which requires a party to preserve the error to avoid forfeiting the right to raise it later in an appeal. The two exceptions to the general rule are: (1) violations of rights which are waivable only; and (2) denials of absolute systemic requirements.[8] Waivable-only rights are "rights of litigants which must be implemented by the system unless expressly waived."[9]

When the appellant has secured a ruling on the evidence made the subject of the issue in the appeal, the trial court's decision to admit or to exclude the evidence is reviewed under an abuse of discretion standard.[10] An abuse of discretion occurs when the trial court's ruling falls outside the zone of reasonable disagreement.[11] If the trial court's ruling is correct

---

[7]*Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986).

[8]*Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002) (cleaned up).

[9]*Mendez v. State*, 138 S.W.3d 334, 340 (Tex. Crim. App. 2004) (quoting *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997)); *Saldano*, 70 S.W.3d at 888.

[10]*Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).

[11]*Id*.

under any theory of law that applies, we will not reverse the judgment in the appeal.[12] Under the abuse of discretion standard, we may not reverse the trial court's ruling unless the record shows it was arbitrary, unreasonable, or made without reference to guiding rules and principles.[13]

The rules of error preservation also apply to a party's complaints about errors that may arise during a party's closing argument. "The right to a trial untainted by improper jury argument is forfeitable."[14] The trial judge "has no duty to enforce forfeitable rights unless requested to do so."[15] "[T]o cure erroneous jury argument, the defendant must object and pursue his objection to an adverse ruling."[16] A defendant who fails to pursue his objection to an adverse ruling forfeits his right to complain on

---

[12]*Id.*
[13]*State v. Lerma*, 639 S.W.3d 63, 68 (Tex. Crim. App. 2021).
[14]*Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018).
[15]*Marin*, 851 S.W.2d at 279-80.
[16]*Hernandez*, 538 S.W.3d at 622.

appeal.[17] "Even an inflammatory jury argument is forfeited if the defendant does not pursue his objection to an adverse ruling."[18]

Analysis

I.  *The issues that assign errors to the trial court's admission of opinion testimony elicited from Detective Cousins*

Five of Kelli's issues are tied to the answers that Detective Cousins gave the prosecutor when responding to questions he was asked by the prosecutor. In issue one, Kelli argues reversible error occurred when Detective Cousins answered, "I do not" when the prosecutor asked him if, after being at the scene and based on his knowledge of the Sartins, he felt "like Kelli acted in self-defense?" In issue two, Kelli argues reversible error occurred when Detective Cousins testified that he believed Kelli's "actions, the assault was the cause of death" after the prosecutor asked him whether he believed that Kelli striking Charles in the head with a rolling pin and spatula caused Charles's death. Kelli discussed her first

---

[17]*Id.*

[18]*Id.* at 622-23; *see Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010) (observing that even if a prosecutor's argument was so egregious that it could not be cured by an instruction to disregard, the defendant "should have moved for a mistrial to preserve this error").

two issues together in her brief. We note that at trial, the record shows that Kelli's attorney didn't object to either the questions or Detective Cousins' answers.

According to Kelli, it wasn't necessary to object to the prosecutor's questions or Detective Cousins' answers since the detective isn't an expert on what causes a person's death or on whether a person acted in self-defense. Kelli contends that in reaching its verdict, it was the jury's sole responsibility to resolve these questions, and she concludes that when Detective Cousins testified on these ultimate issues, which were the jury's alone to resolve, she suffered egregious harm.

The State presents four arguments in response to the arguments Kelli relies on to support her first two issues. First, the State argues that Kelli's complaints about the admission of Detective Cousins' opinions were forfeited because Kelli didn't comply with the rules of error preservation. Second, the State argues that the questions the prosecutor asked Detective Cousins were proper when they are viewed in the context, which the State says is when considering the technique the jury had seen Detective Cousins use when questioning Kelli in the statement

she gave to police on September 9. In that statement, Detective Cousins repeatedly suggests to Kelli that the detectives might see her situation differently were she to claim that she had acted in self-defense. Third, the State argues the opinions Detective Cousin expressed in the trial— that Kelli didn't act in self-defense and that Charles's injuries resulted from the assault—were reasonable deductions from the evidence police gathered in the investigation from "what was logically possible[.]" Fourth, the State argues that even if the trial court erred in admitting the detective's opinions into evidence, the trial court's errors weren't egregious.

An abuse of discretion standard applies to a trial court's ruling on the admissibility of the opinion testimony from a witness, whether the witness is a lay witness or an expert under Rules 701 and 702 of the Texas Rules of Evidence.[19] Even were we to assume that admitting Detective Cousins' opinions on the matters Kelli made the subject of issues one and two violated the rules of evidence, issues we expressly do

---

[19]*Gallo v. State*, 239 S.W.3d 757, 765 (Tex. Crim. App. 2007); *Fairow v. State*, 943 S.W.2d 895, 901 (Tex. Crim. App. 1997).

not decide, evidentiary complaints like the ones Kelli raised under the *Marin* framework are forfeited unless the defendant preserved the right to raise them by making a proper and timely objection to the evidence when they were in trial.[20] Thus, we agree with the State that Kelli forfeited her first two issues by failing to preserve them in the trial court for our review on appeal. Issues one and two are overruled.

In issue three, Kelli complains that when responding to other questions posed by the prosecutor, Detective Cousins testified that he didn't believe Kelli provided him with a completely truthful account when she told him how Charles was injured. Yet the record shows that Kelli didn't object to the prosecutor's questions or to the detective's responses about whether he believed Kelli had been completely truthful with him during her interview on September 9. We conclude that Kelli forfeited her right to complain about the admission of the detective's opinion about Kelli's truthfulness in the interview.[21]

---

[20]*See Saldano*, 70 S.W.3d at 889 (Observing that under the *Marin* framework, a defendant's "failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence.").

[21]*Id.*

In issue five, Kelli argues the trial court erred in admitting Detective Cousins' opinion that he thought "the result would have or could have been different" had Kelli called someone when Charles "was first injured." In issue six, Kelli argues the trial court erred by allowing Detective Cousins to say that it would have been "easier" for Charles to have stabbed himself with the knife that Kelli claimed Charles used to attack her than for his injuries to have occurred in the manner Kelli claimed. At trial, Kelli objected to both the questions about whether there might have been a different result or an easier way to commit suicide because the questions called for speculation. Even though the objections to "speculation" were timely, they were overruled.

We turn first to Kelli's argument that the trial court erred in admitting Detective Cousins' opinion that the result might have been different had Kelli promptly called for help. As mentioned before, Kelli claims the testimony was objectionable because it embraced an ultimate issue of fact, which she claims that as an "ultimate issue" she had a right to have decided by the jury alone. Kelli's argument isn't persuasive. All the cases she relies on in her brief were decided before 1998, the year the

13

Court of Criminal Appeals adopted Texas Rule of Evidence 704. Rule 704 currently provides: "An opinion is not objectionable just because it embraces an ultimate issue."[22]

Kelli also argues the testimony is speculative and therefore inadmissible because Detective Cousins "was not qualified to interpret the facts that were before the jury." That said, Kelli didn't make that argument in the trial court. Even had she done so, the argument Kelli relies on to support her fifth issue is unclear about whether she is relying on Rule 701, the rule of evidence that applies to opinions of lay witnesses, or Rule 702, the rule that applies to expert witnesses.[23] She didn't point either rule out to the trial court or provide the trial court with sufficient information to know that she wanted the trial court to evaluate the detective's opinion under one of those rules. To the extent that Kelli's argument relies on Rule 701 or 702 and suggests Detective Cousins wasn't qualified to interpret the facts before the jury, her argument

---

[22]Tex. R. Evid. 704 (adopted by Tex. Crim. App. effective April 1, 2015, 78 Tex. B. J. 376, superseding the prior Rule 704 without substantive change that was adopted by Tex. Crim. App. effective March 1, 1998, 61 Tex. B. J. 373).

[23]Tex. R. Evid. 701, 702.

doesn't comport with the objections she made in the trial and was waived.[24]

In response to Kelli's fifth issue, the State argues that what the prosecutor meant by "the result" being changed is unclear. According to the State, if "the result" refers to Charles's physical condition, the trial court didn't abuse its discretion by allowing Detective Cousins to suggest that Charles might have survived the assault, as Kelli told the detective that following the fight Charles was still alive, she fed him dinner, put him to bed, and that she checked several times that night and that he waved at her, which Kelli told the detective indicated to her that he was still alive. The State also notes the prosecutor never expressly asked Detective Cousins whether he thought Charles *would* have survived if Kelli had promptly called for help. The State further argues that if "the result" means the detective's testimony implies that a prompt call by Kelli for help on the day she fought with Charles might have changed the trajectory of the investigation that was later conducted by the police in

---

[24]Tex. R. App. P. 33.1; *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (holding the complaint on appeal "must comport with the objection made at trial").

some way, then his opinion about that is arguably based on his training and grounded on the knowledge he obtained in the investigation he conducted on Kelli's case. Consequently, the State contends, Detective Cousins' opinion was helpful to the jury in determining a fact in issue, which was whether Kelly had acted in self-defense. So the State concludes that even if Kelli had objected to the prosecutor's question, the trial court would have had the discretion to have overruled Kelli's objection had one been raised and allowed the detective to express his opinion as a lay witness about whether the result would have or could have been different.[25]

We begin by noting that we agree the question is ambiguous in the context it was asked about whether a "result" would have or could have changed. Was the prosecutor referring to the possibility that Charles might have received medical care before he died, the possibility that Charles lost a chance to survive the assault, or the manner in which the police managed the investigation of the case and how Kelli's failure to

[25]*See id*. 701.

promptly call for help impacted the trajectory of the investigation conducted by police?

All the same, we need not resolve what the question meant or what the detective's answer means to resolve Kelli's fifth issue. That's because Kelli's objection—"calls for speculation"—fails to sufficiently identify what her problem is with the question so that the trial court had an opportunity to identify the evidentiary basis of her complaint and determine whether there was an appropriate remedy. For instance, perhaps the trial court would have sustained Kelli's objection had she objected on the basis that the detective didn't have the training required to provide the jury with an expert opinion about whether Charles probably lost his chance of surviving injuries he suffered during his altercation with Kelly because Kelly didn't promptly call for help. Or, had Kelli objected and argued that the detective's opinion on whether the investigation might have changed was not helpful to the jury's understanding of the detective's testimony, the State would have had the opportunity to tell the trial judge why it thought the detective's testimony was necessary to place his other testimony in context and explain what

17

the State claimed the evidentiary basis was for admitting the testimony on those grounds.

Under the rules of error preservation, "[t]he complaining party bears the responsibility of clearly conveying [their] particular complaint to the trial judge."[26] "To avoid forfeiting a complaint on appeal, the party must let the trial judge know what [they] want[], why [they] think [they] are] entitled to it, and to do so clearly enough for the judge to understand [them] at a time when the judge is in the proper position to do something about it."[27]

Simply put, Kelli's objection "calls for speculation" doesn't identify the reason she claimed the question was speculative. Here, depending on what "the result" meant, the reasons Kelli could have argued the detective shouldn't have been allowed to answer the question could have included that the question (1) called for an answer that wasn't rationally based on the witness's perception, (2) wasn't helpful to a clear understanding of the witness's testimony, (3) wasn't helpful to the jury's

---

[26]*Mosley v. State*, 666 S.W.3d 670, 676 (Tex. Crim. App. 2023).
[27]*Id.* (cleaned up).

18

determining a fact in issue, or (4) called for an answer from a witness who wasn't qualified to answer as an expert by his knowledge, skill, experience, training, or education.[28] Or instead of these four grounds, Kelli's objection might have been based on an argument that the testimony was more prejudicial than probative and as such should be excluded under Rule 403.[29]

We conclude that Kelli's objection—calls for speculation—did not inform the trial court what the appellant wanted, why she thought she was entitled to it, or inform the trial court of her complaint with enough specificity to allow the trial court to understand her when the trial court was in the position to do something about it. Because Kelli forfeited her right to our review of her fifth issue, the issue is overruled.

In issue six, Kelli argues the trial court erred by admitting Detective Cousins' opinion that it would have been easier for Charles to have killed himself with a knife than by beating himself to death in the manner that Kelly described. At trial, Kelli objected to the prosecutor's

---

[28]*Id.*; *see* Tex. R. Evid. 701, 702.
[29]Tex. R. Evid. 403.

question "calls for speculation if it was easier or not." Based on the guiding principles discussed above, the objection "calls for speculation" simply failed to let the trial court know what the appellant wanted, why she thought she was entitled to it, or to do so with enough specificity to allow the trial court to understand her when the trial court was in a position to provide her with a possible cure.[30] Because the complaint Kelli raised in her sixth issue wasn't properly preserved, issue six is overruled.[31]

## II. The issue that assigns error to the admission of Charlene Deslatte's opinion that Charles would have recognized her voice

In issue four, Kelli argues the trial court erred when it allowed Charlene Deslatte to testify that while yelling and banging on the door to Charles's home, she believed Charles would have come to the door if he could have done so. During the trial Kelli objected to the prosecutor's question, asserting the question "calls for speculation."

At trial, Deslatte testified she is a retired investigator, formerly employed by the Federal Bureau of Prisons. According to Deslatte,

---

[30]*Id.*
[31]Tex. R. App. P. 33.1.

20

Charles was her uncle, she lives around four blocks from his home, and she had concerns about his well-being, which arose beginning in 2017. On September 4, 2019, Deslatte went to Charles's house twice, once by herself and once with three others. Both times she "beat on the door" and called out "Uncle Charles." According to Deslatte, Charles would have recognized her voice. When the prosecutor asked: "Do you think – do you think if he were able, he would have come to the door[,]" Kelli objected that the question "calls for speculation."

On appeal, Kelli argues Deslatte's opinion wasn't admissible under Rule 403, but she never specifies whether she claims the probative value of the testimony was outweighed by one or more of the five factors trial courts consider in deciding whether to exclude evidence under Rule 403, specifically: (1) unfair prejudice, (2) confusing the issues, (3) misleading the jury, (4) undue delay, or (5) the needless presentation of cumulative evidence.[32] On top of that, we note that at trial, Kelli never claimed Deslatte's testimony about her belief that Charles would have come to

---

[32]Tex. R. Evid. 403.

the door upon hearing her voice was overly prejudicial or that it was not relevant to an issue of material fact in the trial.

In the context of Kelli's objection, the trial court couldn't have known if Kelli's complaint about Deslatte's testimony was that she wasn't qualified to testify to the opinion as a lay witness under Rule 701.[33] On the other hand, the objection possibly recognized that Deslatte's testimony was relevant, but perhaps Kelli's complaint was that it should be excluded because if admitted, it would be more prejudicial than probative to a fact at issue under one or more of the factors in Rule 403.[34]

Because Kelli's objection that the question called for "speculation" didn't put the trial court on notice of Kelli's complaint—that is whether her complaint was based on Rule 701, Rule 403, or some other Rule—we hold that Kelli's Rule 403 objection wasn't properly preserved for our review.[35]

---

[33]*Id.* 701.

[34]*Id.* 403.

[35]Tex. R. App. P. 33.1. To be clear, we are not holding that objections must provide the trial court with the exact rule number under the rules of evidence. That said, a party's objection must provide the trial court with enough information to allow the trial court to know whether the party is asking the court weigh the probative value of the evidence

## III. *The issues that assign errors to the prosecutor's closing argument*

Three of Kelli's issues, issues seven through nine, contend that Kelli is entitled to a new trial because the prosecutor based his closing argument on evidence that wasn't admitted before the jury in the trial and on arguments that injected the prosecutor's personal opinions into the case.

For example, in issue seven Kelli argues that the prosecutor argued his mother died when she was 81 and suffered from Alzheimer's even though there wasn't any testimony about that before the jury. In issue eight, Kelli contends the prosecutor injected his opinion into the case when he argued that anyone who treated someone the way Charles was treated was "not an accident." "That is murder. There's no excuse for it." In issue nine, Kelli contends the prosecutor made an improper comment on Kelli's right to remain silent when he argued that only two people know what happened on September 4th, and one of them won't tell us.

---

against its prejudicial value (a Rule 403 analysis) or whether the party is asking the court to determine whether the witness doesn't have the qualifications required to testify as a lay witness, an expert witness, and the reason or reasons why.

23

The record shows no objections were made to any of the prosecutor's arguments that Kelli has complained of in issues seven through nine. On appeal, Kelli concedes no objections were raised to arguments she complains about in issues seven through nine. Since Kelli's attorney didn't object to the arguments, we hold that Kelli's complaints about them weren't preserved for our review.[36] Issues seven through nine are overruled.

## IV. *The ineffective assistance of counsel claim*

In Kelli's final issue, issue ten, she argues that she received ineffective assistance of counsel because her trial attorney failed to object to the same errors that she complained about in issues one through three, and in issues seven through nine. We have held that these six issues were not properly preserved at trial for the purposes of her appeal.

Both the United States and Texas Constitution guarantee an accused the right to assistance of counsel.[37] This right necessarily

---

[36]*Id.*
[37]U.S. CONST. amend. VI; Tex. Const. art. I, § 10.

includes the right to reasonably effective assistance of counsel.[38] To prevail on a claim of ineffective assistance, the record before the reviewing court must show these two things: (1) the defendant's attorney performed at a standard that fell below an objective standard of reasonableness, and (2) the defendant was prejudiced by the errors made the subject of the ineffective assistance of counsel claims that the appellant has relied on in their appeal.[39]

To establish a claim of ineffective assistance of counsel, the defendant must create a record that shows the claim is "firmly founded" in the record in the trial court, and the record must "affirmatively demonstrate the meritorious nature of the claim."[40] Generally, unless a record is created in the trial court that allows the attorney who represented the defendant to explain the reasons a case was handled the way it was handled at trial, the record in the direct appeal will not be

---

[38]*See Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (applying the *Strickland* standard to ineffective-assistance-of-counsel claims under the Texas Constitution).

[39]*See Strickland*, 466 U.S. at 687-88; *Hernandez*, 726 S.W.2d at 55.

[40]*Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (cleaned up).

sufficiently developed for the appellant to meet their burden to establish their attorney provided ineffective assistance of counsel in the trial.[41] For example, without a record that shows why the trial attorney defended the matter in the manner the case was defended, the record will be insufficient to establish that the assistance the trial attorney provided the defendant violated the standards of reasonable professional assistance.[42]

Here, the record shows Kelli didn't file any post-judgment motions, including a motion for new trial. Kelli's attorney also did not testify in her trial, so we don't have a record that shows whether a reasonable explanation exists that might explain why her attorney didn't object to the matters that she has complained about for the first time in her appeal. Thus, on this record, Kelli hasn't met her burden to establish that the assistance she received from her attorney violated the standards of

---

[41] *Id.*
[42] *Id.*

reasonable professional assistance.[43] For these reasons, we overrule Kelli's tenth issue.

## Conclusion

Because Kelli's issues are either unpreserved or lack merit, the trial court's judgment is

AFFIRMED.

HOLLIS HORTON
Justice

Submitted on June 27, 2023
Opinion Delivered October 18, 2023
Publish

Before Horton, Johnson and Wright, JJ.

---

[43]*See Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).